# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Hoover v. Country Mutual Insurance Co.*, 2012 IL App (1st) 110939

---

| | |
|---|---|
| Appellate Court Caption | BRIAN HOOVER and JULIE HOOVER, Plaintiffs-Appellants, v. COUNTRY MUTUAL INSURANCE COMPANY and MICHAEL SPANN, Defendants-Appellees. |
| District & No. | First District, Third Division<br>Docket No. 1-11-0939 |
| Rule 23 Order filed<br>Rule 23 Order withdrawn<br>Opinion filed | April 18, 2012<br><br>May 31, 2012<br>July 18, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The one-year limitation period in plaintiffs' homeowners' policy barred the counts of their complaint alleging breach of contract and bad faith arising from their insurer's refusal to pay the replacement cost in connection with the total destruction of their house by an explosion, the count alleging negligent misrepresentation that the policy would cover the replacement cost failed to state a cause of action, and the discovery rule did not toll the statute of limitations applicable to the negligence count; therefore, the dismissal of all counts was affirmed. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-L-2789; the Hon. Joan Powell, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal    Torshen, Slobig, Genden, Dragutinovich & Axel, Ltd., of Chicago (James K. Genden and Robert J. Slobig, of counsel), for appellants.

McKnight, Kitzinger & Pravdic, LLC (Kevin Q. Butler, Cornelius E. McKnight, and Courtney A. Adair, of counsel), and Litchfield Cavo LLP (Alan I. Becker and Steven M. Brandstedt, of counsel), both of Chicago, for appellees.

Panel    JUSTICE NEVILLE delivered the judgment of the court, with opinion.
Presiding Justice Steele and Justice Murphy concurred in the judgment and opinion.

**OPINION**

¶ 1     In March 2010, Brian and Julie Hoover (Hoovers), the plaintiffs, filed a complaint against their home insurer, Country Mutual Insurance Company (Country Mutual), and Michael Spann (Spann), a Country Mutual insurance agent. According to the complaint, Spann promised to provide the Hoovers with an insurance policy that would cover the cost of replacing their home and its contents, but Country Mutual refused to pay the replacement cost when an explosion completely destroyed the Hoovers' home in 2008. Country Mutual and Spann filed separate motions to dismiss the Hoovers' amended complaint, pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2010)), claiming, *inter alia*, that the Hoovers failed to file their complaint within the applicable statutory limitations period and within the one-year limitation provision delineated in the policy. The trial court granted both motions, but the court granted the Hoovers leave to amend their complaint. When the Hoovers elected to stand on their verified amended complaint, the trial court entered a final order that dismissed the Hoovers' complaint against Country Mutual and Spann. On appeal, we must decide whether the trial court erred when it granted the defendants' motions to dismiss all the counts in the Hoovers' complaint as time barred.

¶ 2     We hold (1) that the insurance policy's one-year limitation period bars counts I and II against County Mutual for breach of contract and bad faith; (2) that count III of the complaint fails to state a cause of action for negligent misrepresentation; and (3) that count IV, the negligence count, was untimely under the applicable statute of limitations because the plaintiffs were given a copy of their policy and, therefore, they knew or reasonably should have known more than two years before they filed their complaint that the liability limits in their policy were inadequate to cover the replacement cost of their house and its contents. Accordingly, we affirm the trial court's order that dismissed all counts of the plaintiffs' complaint.

¶ 3                                    BACKGROUND

¶ 4       In 1998, the Hoovers and their family built a house on their land near Pittsfield, Illinois. In 2004, the Hoovers purchased a homeowners' insurance policy from the defendant, Country Mutual, to insure against a loss in the event of a fire or other casualty. In May 2007, the Hoovers met with Spann, a Country Mutual insurance agent, to obtain additional coverage that would cover the replacement cost of their home and its contents in the event of a loss.

¶ 5       Spann obtained a new insurance policy from Country Mutual which contained (1) definitions, (2) covered loss provisions, (3) provisions explaining how covered losses are settled, (4) personal property provisions, (5) an inflation rider, and (6) conditions that are relevant to this case and were delineated in the policy as follows.

¶ 6       The policy defined replacement cost and actual cash value for buildings and structures as follows:

> "Replacement Cost
>
> The cost actually and necessarily incurred to repair or replace the damaged property using standard new construction materials of like kind and quality and standard new construction techniques.
>
> * * *
>
> 1. 'Actual cash value' means:
>
>> a. For buildings or structures the lesser of the following, as determined by 'us':
>>
>>> (1) The cost actually and necessarily incurred to repair or replace the damaged property using standard new construction materials of like kind and quality and standard new construction techniques, less depreciation; or
>>>
>>> (2) Fair market value.
>>
>> b. For property other than buildings and structures the lesser of the following, as determined by 'us':
>>
>>> (1) The cost to repair or replace the damaged property using materials of like kind and quality, less depreciation; or
>>>
>>> (2) Fair market value."

¶ 7       The policy delineated the following covered losses:

> "Loss settlement
>
> 'We' settle covered losses according to Loss Settlement1, Loss Settlement 2 or Loss Settlement 3 ***, depending on what number appears on the Declarations in the 'LOSS STLMT' column for applicable coverage ***."

¶ 8       The policy also explained how Covered losses are settled:

> "1. Loss Settlement 1–80% Insurance Requirement
>
> If '1' appears in the Declarations under 'Loss STLMT':
>
>> a. 'We' pay 'replacement cost' unless paragraph b. applies ***.

b. If the applicable limit of liability for the damaged property is less than 80% of its 'replacement cost' at the time of loss, 'we' will pay 'actual cash value.' "

¶ 9 The policy contained a personal property provision:

"Property covered under Personal Property, Coverage D will be settled under Loss Settlement 3–Actual Cash value at the time of loss, unless 'you' purchase Coverage DD Personal Property Replacement Cost."

¶ 10 The policy also contained an inflation rider:

"The limit of liability specified in the Declarations for those items in SECTION 2 of the policy, which are indicated as having inflation coverage, will be increased at the same rate as the increase in Company Dwelling and Personal Property Index."

¶ 11 Finally, the policy contained Conditions:

"Conditions–SECTION 2 through 6 (Includes Limitations)

A. Insurable Interest And Limit of Liability

'We' will not be liable in any one 'occurrence':

***

2. For more than the applicable limit of liability.

Suit Limitation Provision

Suit Against Us

No action can be brought against 'us' unless there has been full compliance with all the terms under SECTION 2 through 6 of this policy and the action is started within one year after the date of the 'occurrence.' "

¶ 12 The Hoovers' policy declarations listed the dwelling coverage under loss settlement 1 and their personal property coverage under loss settlement 3. According to the complaint, Spann obtained a new policy with increased liability limits for the Hoovers' home and personal property. Thereafter, the Hoovers began paying increased premiums on the new insurance policy.

¶ 13 On January 12, 2008, an explosion completely destroyed the Hoovers' home. The Hoovers' copy of their insurance policy was destroyed in the fire. In February 2008, a contractor working for the Hoovers estimated the cost of replacing their home at $513,000. The Hoovers calculated their personal property loss at $370,000. The Hoovers made a claim with Country Mutual for the replacement cost of their home and its contents.

¶ 14 In February 2008, the Hoovers received a letter from Greg Backoff, a property claims specialist at Country Mutual. The letter stated that "your homeowners policy includes 'Replacement Costs' coverage on the building and the contents." In late February 2008, Country Mutual sent a check to Brian Hoover in the amount of $219,180.58, accompanied by a letter which stated: "this amount reflects the actual cash value of your property at the time of the loss. Once the repairs/replacements have been completed, please submit the paid receipt(s) to my attention so we can determine what additional amount will be reimbursed under your replacement cost coverage."

¶ 15 Country Mutual paid the Hoovers a total of $265,000 for the loss of the dwelling and

$198,000 for the personal property loss as of March 2008.

¶ 16    During the first week of August 2008, Brian Hoover gave Spann the Hoovers' most recent paid receipts, but Spann informed Brian Hoover that Country Mutual would not be making any further payments on the loss.

¶ 17    Country Mutual refused to pay the Hoovers the full replacement cost for their home and personal property. Country Mutual argued that the Hoovers' insurance policy did not entitle them to full replacement cost coverage on their house because they purchased a policy with a liability limit that was less than 80% of the actual replacement cost of their home.

¶ 18    On March 3, 2010, the Hoovers filed their initial four-count complaint against Country Mutual and Spann. Country Mutual and Spann filed separate motions to dismiss the Hoovers' complaint. The court granted both motions and dismissed the complaint with leave to amend.

¶ 19    On September 10, 2010, the Hoovers filed their verified amended complaint. The amended complaint contained the same counts as the initial complaint. In counts I and II, the Hoovers alleged that Country Mutual breached its contract and acted in bad faith. In counts III and IV, they alleged that Spann and his employer, Country Mutual, had negligently misrepresented facts and were negligent.

¶ 20    According to the Hoovers' amended complaint, Brian Hoover visited Spann in May 2007 because the Hoovers realized that in the event of a catastrophic loss, they would not be able to rebuild their home with their own labor as they had done in the past. The complaint alleged that Brian Hoover told Spann that he wanted sufficient insurance coverage to cover the replacement cost of his home and its contents in the event of a loss by fire or other casualty. Brian Hoover averred in his affidavit that Spann assured him that he had procured full replacement cost coverage for his home and its contents.

¶ 21    The Hoovers alleged that during the process of procuring their new insurance policy, Spann did nothing to ascertain what the actual costs would be to replace their home in the event of a loss and Spann did not advise them that they would not receive the replacement cost to replace their home and its contents unless they purchased an insurance policy with liability limits of at least 80% of the actual replacement cost of their home and its contents at the time of the loss. In addition, the complaint alleged that based on the increased coverage in the new insurance policy, Spann led the Hoovers to believe that "he had obtained a replacement cost insurance policy that would cover the actual cost of the replacement of the Hoovers' home and its contents, with a home of like kind and quality, in the event of a fire or casualty loss."

¶ 22    During discovery, Country Mutual sent the Hoovers a request for admission pursuant to Illinois Supreme Court Rule 216 (eff. Jan. 1, 2011). The Hoovers responded and admitted that the attached insurance policy, which had declarations and endorsements, was a true and correct copy of the policy of insurance that they had with Country Mutual.

¶ 23    Country Mutual filed its motion to dismiss counts I and II of the Hoovers' amended complaint, pursuant to section 2-619(a)(9) of the Code of Civil Procedure, and argued that the counts were barred by the applicable contractual limitation period. Country Mutual adopted the time limitation argument asserted by Spann in his motion to dismiss with regard

to counts III and IV. In addition, Country Mutual argued that it could not be held liable under the doctrine of *respondeat superior* where its alleged agent did not owe a duty of care and where counts III and IV were also time barred. Lastly, Country Mutual argued that neither Country Mutual nor Spann owed the Hoovers a duty to provide adequate insurance coverage.

¶ 24　Spann filed a motion to dismiss counts III and IV of the Hoovers' verified amended complaint pursuant to section 2-619(a)(5) of the Code of Civil Procedure. Spann alleged in his motion that the court should dismiss counts III and IV of the Hoovers' complaint because the applicable statute of limitations barred both counts and because the Hoovers failed to show that Spann owed them a duty that would support their claims of negligent misrepresentation and negligence.

¶ 25　Spann also argued that the plaintiffs knew or should have known of their injury no later than February 2008. Spann supported his motion with the deposition transcript of attorney Kenneth Carlson. Mr. Carlson testified during his deposition that Brian Hoover was his wife's cousin and that he had acted as an attorney for the Hoovers in February 2008, regarding the claims process on their fire loss. Carlson also testified that he spoke with Spann in late February 2008 to ensure that the Hoovers' receipt of any check would not be accompanied by any waivers or releases. During the deposition, Spann's attorney produced a note from the Hoovers' claim file which indicated that the conversation between Spann and Carlson might have taken place on February 21, 2008, and it also confirmed Carlson's testimony that he requested a copy of the policy's declarations. Carlson further testified that he could not recall the exact date but he believed it to have been sometime in late February or early March 2008 that he received a copy of the policy's declarations from Brian Hoover's mother. Finally, he testified that he did not speak with the Hoovers after he received the policy's declarations.

¶ 26　In the Hoovers' response to Spann's motion to dismiss counts III and IV, they argued that their claims against Spann were not time barred because the discovery rule postponed the running of the limitations period until the Hoovers learned of their injury, and they learned of the injury in August 2008 when Spann advised the Hoovers that Country Mutual would not be making any further payments.

¶ 27　On December 27, 2010, the circuit court held a hearing on the motions to dismiss. After the hearing, the circuit court dismissed all counts as time barred, but it granted the Hoovers leave to file a second amended complaint. The Hoovers decided to stand on their amended complaint, and they filed a motion requesting that the court enter a final and appealable order disposing of all four counts. On March 16, 2011, the trial court entered the following order:

"1. The Plaintiffs' Verified Amended Complaint was dismissed without prejudice on December 27, 2010, based upon certain defects and affirmative matters.

2. On December 27, 2010, the plaintiffs were given leave to file a second amended complaint on or before January 26, 2011.

3. The plaintiffs*** have expressly elected to stand on the Verified Amended Complaint in order to obtain a final, appealable order.

4. In light of the foregoing, the plaintiffs' Verified Amended Complaint in its entirety is hereby dismissed with prejudice."

-6-

¶ 28    The Hoovers timely filed their notice of appeal pursuant to Supreme Court Rules 301 and 303. Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); Ill. S. Ct. R. 303 (eff. May 30, 2008).

¶ 29                                    ANALYSIS

¶ 30                               Standard of Review

¶ 31    In this case, the trial court granted the defendants' motions to dismiss that were predicated on section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619(a) (West 2010)). A motion to dismiss under section 2-619 of the Code admits the legal sufficiency of the complaint, but asserts affirmative matters outside the complaint that defeat the cause of action. *Kean v. Wal-Mart Stores, Inc.*, 235 Ill. 2d 351, 361 (2009). Specifically, section 2-619(a)(5) of the Code permits a court to dismiss a complaint if it was not commenced within the time limited by law. 735 ILCS 5/2-619(a)(5) (West 2010). Section 2-619(a)(9) permits an involuntary dismissal when the claim is "barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a)(9) (West 2010). When ruling on a section 2-619 motion, a court must accept as true all well-pleaded facts in the plaintiff's complaint and all reasonable inferences. *Hermitage Corp. v. Contractors Adjustment Co.*, 166 Ill. 2d 72, 85 (1995) (citing *Burdinie v. Village of Glendale Heights*, 139 Ill. 2d 501, 505 (1990)). The motion should be granted if, after construing the documents in support of and in opposition to the motion in the light most favorable to the nonmoving party, there are no disputed issues of material fact. *Whetstone v. Sooter*, 325 Ill. App. 3d 225, 229 (2001) (citing *Noesges v. Servicemaster Co.*, 233 Ill. App. 3d 158, 162 (1992)). We review an order dismissing a case based on section 2-619 of the Code *de novo*. *Kean*, 235 Ill. 2d at 361.

¶ 32    In order to determine whether the circuit court properly dismissed all four counts of the Hoovers' complaint, we must construe a statute of limitations and an insurance policy, which is a contract. Therefore, because construction of a statute and a contract present questions of law, we also employ a *de novo* standard of review. *American States Insurance Co. v. Koloms*, 177 Ill. 2d 473, 479-80 (1997); *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 345 (2002).

¶ 33                               Breach of Contract

¶ 34    The Hoovers contend that the trial court erred when it dismissed count II as time barred based on the one-year contractual limitation provision because their copy of the insurance policy was destroyed in the fire and the circuit court therefore could not determine whether the provision was in fact contained in the policy. We note, however, that the Hoovers admitted in their response to Country Mutual's Rule 216 request to admit that the copy of the insurance policy that Country Mutual appended to the request to admit was a true and correct copy of the policy of insurance that they had with Country Mutual. Admissions made pursuant to a request to admit under Rule 216 are tantamount to judicial admissions and as such are taken as true. *Mt. Zion State Bank & Trust v. Consolidated Communications, Inc.*, 169 Ill. 2d 110, 125 (1995) (citing *City of Champaign v. Roseman*, 15 Ill. 2d 363 (1958)). Therefore, once the Hoovers admitted that the insurance policy Country Mutual appended

to the Rule 216 request to admit was a true and correct copy of their insurance policy, the Hoovers cannot now claim, because the policy was destroyed in the fire, that the suit limitation provision contained in their insurance policy does not exist.

¶ 35      The suit limitation provision in the Hoovers' insurance policy provided that all suits against Country Mutual must be brought within one year of the date of the occurrence. In *Cramer v. Insurance Exchange Agency*, 174 Ill. 2d 513 (1996), our supreme court held that compliance with a suit limitation provision within a policy is a condition precedent to recovery under the policy. *Cramer*, 174 Ill. 2d at 530 (citing *Schoonover v. American Family Insurance Co.*, 214 Ill. App. 3d 33, 44 (1991)). In *Cramer*, the insurance policy at issue had a one year suit limitation provision similar to the one in this case. The policy provision provided that a suit on the policy must be brought within one year of the loss. The court found that the plaintiff's suit was untimely because the plaintiff filed the complaint more than one year after the loss. *Cramer*, 174 Ill. 2d at 530. Here, the Hoovers' home was destroyed on January 12, 2008. The Hoovers filed their initial complaint against Country Mutual on March 3, 2010, more than two years after the explosion. Therefore, based on the one-year suit limitation provision in the policy, the Hoovers' breach of contract claim was untimely. *Cramer*, 174 Ill. 2d at 530.

¶ 36      The Hoovers next contend that notwithstanding the suit limitation provision in the policy, the court should apply the discovery rule to determine if the suit was untimely. In *Wilson v. Indiana Insurance Co.*, 150 Ill. App. 3d 669 (1986), this court noted that Illinois case law establishes that insurance policies may validly set forth contractual time limitations requiring suits to be brought within a specified period of time. *Wilson*, 150 Ill. App. 3d at 672 (citing *Peoria Marine & Fire Insurance Co. v. Whitehill*, 25 Ill. 382 (1861)). A limitation provision is but another provision of the standard policy, one of many that may effectively bar relief to the insured. *Wilson*, 150 Ill. App. 3d at 672. The *Wilson* court refused to apply the discovery rule to the facts in that case, noting that no court of this state had adopted the discovery rule with regard to the time limits of policies for filing suits to recover for losses covered thereby. *Wilson*, 150 Ill. App. 3d at 672 (citing *Naghten v. Maryland Casualty Co.*, 47 Ill. App. 2d 74 (1964)). The *Wilson* court concluded that the plaintiff's complaint was untimely because the plaintiff failed to comply with the contractual limitation provision in the policy. *Wilson*, 150 Ill. App. 3d at 673. In light of *Wilson*, we will not apply the discovery rule to the Hoovers' breach of contract count. Accordingly, we hold that the trial court did not err when it dismissed the breach of contract count.

¶ 37                                    Insurance Bad Faith

¶ 38      Next, the Hoovers contend that the one-year suit limitation provision does not apply to their bad-faith claim against Country Mutual because it is not an action for breach of contract. Section 155 of the Illinois Insurance Code provides:

"In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of

the taxable costs in the action reasonable attorney fees, other costs ***." 215 ILCS 5/155 (West 2010).

¶ 39 In *Cramer*, our supreme court addressed the tort of bad faith and unfair dealing and explained that historically, a policyholder's only recourse was to seek a breach of contract remedy to receive the policy proceeds. *Cramer*, 174 Ill. 2d at 521. The *Cramer* court further explained that section 155 created a limited statutory exception that allowed insureds to recover attorney fees and punitive damages from insurers that unreasonably delayed or denied payment of an insurance claim. *Cramer*, 174 Ill. 2d at 521. The *Cramer* court found that the tort of bad faith is not a separate and independent tort action that is recognized in Illinois. *Cramer*, 174 Ill. 2d at 519-26. The *Cramer* court held:

"[T]he statute provides an extracontractual remedy for policyholders who have suffered unreasonable and vexatious conduct by insurers with respect to a claim under the policy. It presupposes an action on the policy. As such, nothing in the statute addresses tortious conduct or tort liability in general. The statute simply provides an extracontractual remedy to an action on the policy." *Cramer*, 174 Ill. 2d at 523-24.

¶ 40 The *Cramer* court explained that the statute presupposes an action on the policy, and therefore, in order for a plaintiff to recover under section 155, he must also succeed in the action on the policy. See *Cramer*, 174 Ill. 2d at 524; *Johnson Press of America, Inc. v. Northern Insurance Co. of New York*, 339 Ill. App. 3d 864, 875 (2003) (citing *Martin v. Illinois Farmers Insurance*, 318 Ill. App. 3d 751, 764 (2000) (the court found that the plaintiff's loss was not covered by the insurance policy and held that the defendant could not be held liable for section 155 relief where no benefits were owed)).

¶ 41 Therefore, because the breach of contract action was time barred, and the Hoovers' claim for bad faith against Country Mutual was dependent on the success of the breach of contract action, the trial court did not err when it dismissed the bad-faith count against Country Mutual. See *Johnson Press of America, Inc.*, 339 Ill. App. 3d at 875.

¶ 42                                          Negligent Misrepresentation

¶ 43 In count III of the Hoovers' amended complaint, they alleged that Spann negligently misrepresented facts and led them to believe that he had procured full replacement cost coverage for their home and personal property. The trial court dismissed count III as time barred. The defendants ask us to affirm the dismissal both because the Hoovers did not timely file the complaint and because the complaint does not allege facts that show the defendant owed the Hoovers a duty not to negligently misrepresent the policy coverage. A reviewing court need not accept the reasons given by the circuit court for its judgment. "Rather, a reviewing court can uphold the decision of the circuit court on any grounds which are called for by the record regardless of whether the circuit court relied on those grounds and regardless of whether the circuit court's reasoning was correct." *Ultsch v. Illinois Municipal Retirement Fund*, 226 Ill. 2d 169, 192 (2007) (citing *Rodriguez v. Sheriff's Merit Comm'n*, 218 Ill. 2d 342, 357 (2006)).

¶ 44 We first note that the suit limitation provision in the contract does not apply to count III because the negligent misrepresentation count is a tort action against Spann and Country

Mutual and it is not an action for breach of the Hoovers' contract with Country Mutual. See *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 67 (2004). Before we decide if the applicable limitations period bars the negligent misrepresentation count, we must first address the defendants' argument that the Hoovers have not alleged sufficient facts to state a cause of action for negligent misrepresentation.

¶ 45    In order to state a cause of action for negligent misrepresentation, a complaint must first allege facts establishing that the defendants owed the plaintiff a duty to communicate accurate information. *Brogan v. Mitchell International, Inc.*, 181 Ill. 2d 178, 183 (1998) (citing *Board of Education v. A, C & S, Inc.*, 131 Ill. 2d 428, 452 (1989)). Our supreme court explained in *Brogan* that it has recognized a duty to communicate accurate information in only two circumstances. First, the court has imposed a duty to avoid negligently conveying false information where the information results in physical injury to a person or harm to property. *Brogan*, 181 Ill. 2d at 183-84 (citing *Board of Education*, 131 Ill. 2d at 454-56). Second, the court has imposed a duty to avoid negligently conveying false information where one is in the business of supplying information for the guidance of others in their business transactions. *Brogan*, 181 Ill. 2d at 184 (citing *Moorman Manufacturing Co. v. National Tank Co.*, 91 Ill. 2d 69, 89 (1982)). Cases addressing the tort of negligent misrepresentation have also held that negligent misrepresentation actions are almost universally limited to situations involving a defendant who, in the course of his business or profession, supplies information for the guidance of others in their business relations with third parties. *Lang v. Consumers Insurance Service, Inc.*, 222 Ill. App. 3d 226, 235 (1991) (citing *Black, Jackson & Simmons Insurance Brokerage, Inc. v. International Business Machines Corp.*, 109 Ill. App. 3d 132, 135 (1982)).

¶ 46    Here, the information that Spann supplied to the Hoovers did not result in any physical harm to the Hoovers, nor did the Hoovers' reliance on Spann's information cause the damage to their home and property. See Restatement (Second) of Torts § 311 cmt. d, illus. 8 (1965). Therefore, the first test a court uses to determine whether to impose a duty on a defendant to communicate accurate information does not apply in this case.

¶ 47    Next, we must determine whether the defendants in this case were in the business of supplying information for the guidance of others in their business transactions which would impose a duty on defendants to communicate accurate information to the Hoovers. According to the allegations in the Hoovers' complaint, Country Mutual is in the business of selling insurance. The parties agree that Spann was acting as an agent of Country Mutual at the time of the occurrence. Because Spann was Country Mutual's agent, he too was engaged in the business of selling homeowners' insurance. See *Lang*, 222 Ill. App. 3d at 234. A true agency requires that the agent's function is to carry out the principal's business. *Lang*, 222 Ill. App. 3d at 234 (citing *Clapp v. JMK/Skewer, Inc.*, 137 Ill. App. 3d 469, 472 (1985)). Based on the allegations in the plaintiffs' complaint, both Country Mutual and Spann were selling homeowners' insurance to members of the public, including the plaintiffs. The defendants sold the Hoovers homeowners' insurance, but at no time were they engaged in the business of providing information to the plaintiffs for guidance in business transactions. See *Lang*, 222 Ill. App. 3d at 234. Therefore, any information that Spann gave to the Hoovers was not supplied to aid the Hoovers in doing business with a third party but was merely

ancillary to his sale of homeowners' insurance. See *Lang*, 222 Ill. App. 3d at 236; *Fireman's Fund Insurance Co. v. SEC Donohue, Inc.*, 176 Ill. 2d 160, 168 (1997) (the negligent misrepresentation exception to the *Moorman* doctrine is not applicable if the information supplied is merely ancillary to the sale of a product).

¶ 48 The Hoovers also argued that Spann voluntarily assumed the duty to make a correct representation when Spann "affirmatively assured" Brian Hoover that he had obtained the replacement cost policy that Hoover had requested. We find that the Hoovers' voluntary undertaking argument fails because, as Spann argued, such a cause of action is limited to cases where the plaintiff suffers physical harm caused by action taken in reasonable reliance on the information supplied by defendant. See *Vancura v. Katris*, 238 Ill. 2d 352, 382 (2010) (citing Restatement (Second) of Torts § 323 (1965), and *Frye v. Medicare-Glaser Corp.*, 153 Ill. 2d 26, 32 (1992)).

¶ 49 Accordingly, we hold that the Hoovers have failed to allege facts that state a cause of action for negligent misrepresentation against Spann and Country Mutual, and, therefore, there is no need to address whether the negligent misrepresentation claim was time barred.

¶ 50                                    Negligence

¶ 51 Finally, the Hoovers contend in count IV of their complaint that Spann was negligent when he failed to procure an insurance policy that provided replacement cost coverage according to their instructions. First, we must determine whether the plaintiffs' negligence count was timely. The statute of limitations for a negligence action against an insurance producer, like Spann, is found in section 13-214.4 of the Code. 735 ILCS 5/13-214.4 (West 2010). Section 13-214.4 of the Code provides that all actions against an insurance producer must be brought within two years of the date the cause of action accrues. 735 ILCS 5/13-214.4 (West 2010).

¶ 52 In determining when a cause of action accrues under the statute, this court has explained that for contract actions and torts arising out of contractual relationships, the cause of action accrues at the time of the breach of the contract, not when a party sustains damages. *Indiana Insurance Co. v. Machon & Machon, Inc.*, 324 Ill. App. 3d 300, 303 (2001). In this case, the cause of action accrued in May 2007 when Spann allegedly procured an insurance policy for the Hoovers that did not comply with their requests, and the statute of limitations would have expired in May 2009. Therefore, since the Hoovers filed their initial complaint on March 3, 2010, more than two years after the cause of action accrued, the complaint was untimely, unless tolled by the discovery rule.

¶ 53                              The Discovery Rule

¶ 54 The parties acknowledge that the discovery rule may be used to toll the applicable statute of limitations. However, the dispute concerns when the plaintiffs' knew or reasonably should have known of their injury.

¶ 55 The discovery rule relating to the statute of limitations has been applied across a broad spectrum of litigation to alleviate what has been viewed as harsh results resulting from the

-11-

literal application of the statute. *Knox College v. Celotex Corp.*, 88 Ill. 2d 407, 414 (1981). Cases applying the discovery rule hold that the statute starts to run when the plaintiff knows or reasonably should know that he has been injured and that his injury was wrongfully caused. *Witherell v. Weimer*, 85 Ill. 2d 146, 156 (1981) (citing *United States v. Kubrick*, 444 U.S. 111 (1979)); *Knox College*, 88 Ill. 2d at 415. At that point, the injured person possesses sufficient information concerning his injury and its cause to put a reasonable person on notice to determine whether actionable conduct is involved. *Knox College*, 88 Ill. 2d at 416. The court should enter judgement as a matter of law when the undisputed facts allow for only one conclusion as to when the plaintiff had sufficient information. *Jackson Jordan, Inc. v. Leydig, Voit & Mayer*, 158 Ill. 2d 240, 250 (1994).

¶ 56    In the present case, the facts establish that Brian Hoover received a copy of Country Mutual's policy because he indicates in his affidavit that it was destroyed in the fire. In May 2007, the facts establish that Hoover only sought to increase the liability limits in the policy for his house and its contents. But, the facts also establish that at no time did Hoover seek to change two provisions in the policy: (1) the provision which required losses with loss settlement 1 to have an 80% insurance requirement, and (2) the condition which provided that the company will not be liable in any one occurrence for more than the applicable limit of liability.

¶ 57    The Hoovers' dwelling was covered under loss settlement 1 in the policy which states that the liability limit for the dwelling had to be at least 80% of what the cost would be to replace the property in order to satisfy the requirement for replacement cost coverage. In the event the liability limits were not 80% of the costs to replace the property, Country Mutual would only pay actual cash value for the property.

¶ 58    The declarations delineated the policy limits for the Hoovers' home and personal property as follows: dwelling $258,000; and personal property $193,500. We note that the inflation rider increased the liability limits to $265,000 for the dwelling and $198,000 for personal property. Regardless of the actual replacement cost, the policy contained a limitation on the amount that Country Mutual would pay. The conditions section of the policy provided that Country Mutual would not be liable in any one occurrence for more than the applicable limit of liability.

¶ 59    Therefore, Country Mutual acted pursuant to the terms of the policy when it paid the Hoovers the liability limits as dictated by the terms of the policy. While laymen may not, as a common practice, read insurance policies, we cannot excuse plaintiffs from their burden of knowing the terms and liability limits of their insurance policies and bringing alleged discrepancies to the attention of their insurance company. *Foster v. Crum & Forster Insurance Cos.*, 36 Ill. App. 3d 595, 598 (1976).

¶ 60    We find that once the Hoovers received the policy, they were in the best position to determine if the policy's $258,000 liability limit for their house was sufficient to meet the 80% replacement cost requirement, and by receiving the policy prior to the fire, they had an opportunity to read their insurance policy and determine whether the policy limits with Country Mutual were adequate.

¶ 61    When Country Mutual provided the Hoovers with a copy of their insurance policy, which

-12-

delineated the liability limits for the house and its contents, they had all the information that they needed to determine the limits of their coverage. Therefore, we hold that the discovery rule does not toll the statute of limitations because the Hoovers knew or should have known more than two years before they filed their complaint that the policy did not contain liability limits that would provide them with full replacement coverage. Accordingly, because the negligence count was untimely, we need not address the issue of whether Spann had a duty to provide the Hoovers with the coverage that they requested.

¶ 62                                    CONCLUSION

¶ 63        We hold (1) that the trial court did not err when it dismissed the breach of contract count against Country Mutual, and (2) that the trial court did not err when it dismissed the bad-faith count against Country Mutual. We also hold that the Hoovers failed to state a cause of action for negligent misrepresentation in count III against Spann and Country Mutual. Finally, we hold that count IV, the negligence count, was barred by the statute of limitations and that the discovery rule does not toll the statute of limitations because Country Mutual provided the Hoovers with a copy of their policy and, therefore, they knew or should have known that the liability limits in their policy did not provide full replacement coverage on their home and personal property more than two years before they filed their complaint against the defendants.

¶ 64        Affirmed.