2023 IL App (1st) 220975-U

No. 1-22-0975

Second Division
June 30, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| | ) | Appeal from the |
| NEVA RODEZ, | ) | Circuit Court of |
| | ) | Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 19 L 10228 |
| | ) | |
| FOUNDERS INSURANCE COMPANY, | ) | |
| | ) | Honorable |
| Defendant-Appellant. | ) | Michael F. Otto |
| | ) | Judge, presiding. |

_____

JUSTICE COBBS delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Ellis concurred in the judgment.

**ORDER**

¶ 1     *Held*:   Where section 155 of the Illinois Insurance Code does not create a stand-alone cause of action for alleged vexatious and unreasonable delay, the circuit court's entry of summary judgment in favor of defendant insurer is affirmed.

¶ 2     At the root of this appeal is a claim for uninsured motorist benefits. Plaintiff, Neva Rodez was involved in an accident with an uninsured motorist. Following the accident, Rodez filed a claim for benefits with her insurer, Founders Insurance Company (Founders). Subsequent to

Founders' payment of the claim, Rodez filed a single-count complaint against Founders in the circuit court of Cook County. In the complaint, Rodez alleged that Founders engaged in vexatious conduct and unreasonable delay in settling the claim entitling her to recovery pursuant to section 155 of the Illinois Insurance Code (Code), 215 ILCS 5/155 (West 2018). In response to the complaint, Founders filed a motion for summary judgment in which it argued that no such cause of action for the stand-alone claim of unreasonable delay existed in Illinois pursuant to the Code. The circuit court granted summary judgment in favor of Founders, and Rodez appealed. For the reasons that follow, we affirm the circuit court's judgment.

¶ 3                               I. BACKGROUND

¶ 4     The facts set forth below are derived from the pleadings and other documentation on file. We note at the outset that there is no dispute regarding any aspect of coverage.

¶ 5                      A. Accident and Arbitration Proceedings

¶ 6     On or prior to June 11, 2016, Rodez purchased a policy of insurance from Founders, with effective dates of coverage between June 11, 2016 through June 1, 2017. On February 2, 2017, Rodez was struck by an uninsured motorist in which she sustained injuries. Subsequently, Rodez filed a claim for uninsured/underinsured benefits under her policy with Founders. On August 15, 2017, Rodez provided Founders with medical records and billing documents from the accident, totaling $48,788.19, and demanded that Founders pay the benefits policy limits no later than September 5, 2017. Founders did not pay the policy limits by the demand date.

¶ 7      On or about September 26, 2017, Rodez filed a demand for arbitration and a request that Founders propound written discovery on her as she had not by then received it. Subsequently, on June 13, 2018, Founders noticed the sworn statement of Rodez for July 26, 2018, but then cancelled

it the day of. On July 26, August 31, and September 5, 2018, Rodez requested new dates from Founders for the sworn statement. Founders did not respond to the requests.

¶ 8    On September 7, 2018, Founders contacted Rodez and requested discovery responses. Rodez responded that Founders had never propounded discovery. On September 12, 2018, Rodez emailed Founders a second copy of her bills and records related to the accident. Shortly thereafter, on September 25, 2018, Rodez was produced for her sworn statement. The case was then set to proceed to arbitration on January 18, 2019. Prior to proceeding to arbitration, Rodez made a second demand that Founders pay the policy limits by not later than December 18, 2018. Founders did not meet the demand date.

¶ 9    The case proceeded to arbitration on April 18, 2019. Rodez was awarded $108,000, which was adjusted to a final award of $100,000 ($48,000 in medical expenses plus $60,000 for pain and suffering and loss of natural life) in accordance with the policy limits.

¶ 10                              B. Circuit Court Proceedings

¶ 11    On September 17, 2019, Rodez filed a single-count complaint against Founders pursuant to section 155 of the Code. Rodez alleged that Founders' handling of her claim prior to arbitration had been unreasonable and vexatious, in that it had no just basis to not pay her claim after evaluating the injuries and losses sustained, and that by failing to pay the benefit prior to the arbitration, Founders was acting in its own interest.[1]

¶ 12    On February 5, 2020, Founders filed an answer to the complaint. The case proceeded with discovery and related motion practice. On February 9, 2022, Founders filed a motion for summary

_____

[1]The complaint does not identify the date on which Founders paid the arbitration award. However, included in the record is a copy of a check dated June 6, 2019, in the amount of $100,000, issued by "Founders Insurance Company" and made payable to "Neva Rodez Karchmar & Lambert PC."

judgment, in which it argued that that Rodez's claim to recover extracontractual damages was not "connected to an action on the policy" and thus was insufficient to support a stand-alone claim pursuant to the Code. In support of its contention, Founders cited *Cramer v. Insurance Exchange Agency*, 174 Ill. 2d 513 (1996), *Hoover v. Country Mutual Insurance Co.*, 2012 IL App (1st) 110939, and *Kroutil v. State Farm Mutual Auto Insurance Co*., 2021 IL App (4th) 210238, as dispositive. Founders further argued that it had paid Rodez the full limits of the policy following arbitration, and thus Rodez had no basis to bring an action "on the policy" against Founders.

¶ 13    In response, Rodez argued that Founders' motion ignored that her complaint did involve a claim on the policy, as she had been forced to pursue an action on the policy through "mediation." Rodez further contended that *Cramer* stood for the proposition that section 155 of the Code provided for an extracontractual remedy for an insurer's misconduct in connection with a claim, and did not bar other causes of action against an insurer unrelated to a breach of policy obligations.

¶ 14    Founders filed a reply, reiterating that Rodez had never pursued a qualifying "action" on the policy. Founders also maintained that the circuit court was bound by Founders' cited authority, specifically *Cramer*, which dictated that a stand-alone claim for insurer misconduct was not actionable under the Code.

¶ 15    Following oral argument, on June 2, 2022, the circuit court, in a brief written order, entered summary judgment in favor of Founders. On June 30, 2022, Rodez timely filed this appeal.

¶ 16                                II. ANALYSIS

¶ 17                          A. Standard of Review

¶ 18    Summary judgment is intended to determine whether triable issues of fact exist and "is appropriate when the pleadings, affidavits, depositions, admissions, and exhibits on file, when viewed in the light most favorable to the nonmovant, reveal that there is no genuine issue as to any

material fact and that the movant is entitled to judgment as a matter of law." *Busch v. Graphic Color Corp.*, 169 Ill. 2d 325, 333 (1996). Our review of a circuit court's decision on a motion for summary judgment is *de novo* and we may affirm on any basis appearing in the record. *Fan v. Auster Co.*, 389 Ill. App. 3d 633, 648 (2009). Although we anticipate no occasion to do so here, we note that our interpretation of statutes is, in like manner, reviewed *de novo. NDC LLC v. Topinka*, 374 Ill. App. 3d 341, 358 (2007).

¶ 19                    B. Section 155 of the Illinois Insurance Code

¶ 20    Prior to our discussion of the parties' arguments on appeal, we begin with the statute at issue. Section 155 of the Code provides:

"(1) In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts:

(a) 60% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;

(b) $60,000;

(c) the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action.

(2) Where there are several policies insuring the same insured against the same loss whether issued by the same or by different companies, the court may fix the amount of the

allowance so that the total attorney fees on account of one loss shall not be increased by reason of the fact that the insured brings separate suits on such policies." 215 ILCS 5/155 (West 2018).

¶ 21    Rodez's main contention on appeal is that the circuit court erred in granting summary judgment in favor of Founders. Rodez contends that section 155 was intended to provide for an independent cause of action for unreasonable delay, relying on the statute's historical development and purpose, as well as various rules of statutory construction. Founders responds that summary judgment in its favor was proper because, as it argued before the circuit court, our supreme court in *Cramer v. Insurance Exchange Agency*, 174 Ill. 2d 513 (1996), established that a stand-alone claim under section 155 is not available because the statute "[p]resupposes an action on the policy." In reply, Rodez acknowledges that *Cramer* interpreted section 155, but insists here that the circuit court misread the case.

¶ 22    If *Cramer* can be read as Founders suggest, its holding is dispositive of the issue here on appeal. Thus, we begin, and potentially end, our analysis with a review of *Cramer*.

¶ 23                    C. *Cramer v. Insurance Exchange Agency*

¶ 24    The facts in *Cramer* are neither lengthy nor complex. In 1991, plaintiff purchased a homeowner's insurance policy from the defendant insurer and paid the premium. 174 Ill. 2d at 515. The policy covered the plaintiff's personal property, with coverage for a period of one year from October 25, 1991, to October 25, 1992. *Id.* According to the insurer, a notice of insurance cancellation was sent to the plaintiff in December 1991, with cancellation effective January 6, 1992. *Id.* at 516. Three days following the alleged cancellation, on January 9, 1992, the plaintiff's home was burglarized. *Id.* The plaintiff sent proof of loss to the insurer in May of that same year.

*Id.* On May 22, 1992, the insurer denied the claim, asserting that the burglary had occurred three days after the policy was cancelled. *Id.*

¶ 25    In October 1993, more than a year after the denial of the claim, the plaintiff filed suit against the insurer, alleging that the insurer never sent notice of cancellation, and that the insurer was using the purported cancellation "with the expressed and intentional purpose to defraud [the] [p]laintiff out of his coverage which he was legally entitled to." *Id.* at 515, 516. The insurer moved for summary judgment. *Id.* at 516. In a supplement to its motion, the insurer argued two-fold that: to the extent that the plaintiff's claim was for breach of contract, it was time-barred pursuant to the policy; and to the extent the action was a tort, it was barred by the preemptive effect of section 155 of the Illinois Insurance Code. *Id.* The circuit court denied the motion for summary judgment, and then certified two questions for interlocutory appeal: (1) whether section 155 of the Code preempted a common law fraud cause of action against the insurer for its alleged unreasonable conduct in denying the claim, and (2) whether a policy's limitations provision applies to a common law fraud cause of action against an insurance company for its allegedly unreasonable conduct in denying an insurance claim. *Id.* at 515, 517. The appellate court affirmed the circuit court's denial of the insurer's motion for summary judgment, and the insurer appealed to the supreme court. *Id.* at 517.

¶ 26    Our supreme court noted that much of the lower court's analysis in denying the motion for summary judgment had been based on cases involving the tort of bad faith and unfair dealing, and that the underlying complaint, although "inartfully drafted," could be construed as alleging the same. *Id.* at 518. In its analysis, the court first examined the development of section 155, setting forth in some detail the history of the statutory provision. *Id.* at 518-522. The court then proceeded to construe the current version of the provision, which is the same version at issue today. *Id.* at

518-522. Continuing on, the court next reviewed the analysis and disposition in *Ledingham v. Blue Cross Plan for Hospital Care of Hospital Service Corp.*, 29 Ill. App. 3d 339 (1975), *rev'd on other grounds*, 64 Ill. 2d 338 (1976), which, the court observed, had recognized a tort action for bad faith and unfair dealing in connection with the denial of a claim by an insurer. *Id.* at 520-21. The court noted that, up until the decision in *Ledingham*, the tort of bad faith and unfair dealing had not been recognized in Illinois in this context. *Id.* at 521. However, based on such precedent, the *Cramer* court acknowledged that an insurer's conduct may give rise to both a breach of contract action and a separate independent tort action, and as such, section 155 did not preempt a separate and independent tort action relating to insurer misconduct. *Id.* at 527, 518. Notwithstanding this, the court cautioned that "[m]ere allegations of bad faith or unreasonable and vexatious conduct, without more *** do not constitute such a tort." *Id.* at 527.

¶ 27    The supreme court's decision in *Cramer* was released in 1996, more than 25 years prior to the filing of the case now before us. We find it particularly telling that, during this significant amount of time, the legislature has not seen fit to amend section 155 in any way that would either contradict, clarify or, more importantly, alter the *Cramer* court's interpretation of the same statutory provision. See *Henrich v. Libertyville High School*, 186 Ill. 2d 381, 387 (1998) (When the supreme court has interpreted a statute, the court's interpretation is considered part of the statute itself until the legislature amends it contrary to the court's interpretation.).

¶ 28    Notwithstanding the binding effect of our supreme court's interpretation of section 155 in *Cramer*, Rodez continues to further analyze the provision in an attempt to show that *Cramer*'s discussion is inapplicable to the facts of this case. Specifically, Rodez argues that the *Cramer* court was not confronted with a lawsuit brought pursuant to section 155, but instead considered whether the section preempted a tort claim for fraud. Rodez points out that the key statutory phrase,

"unreasonable delay in settling a claim," does not appear in the court's discussion, and further contends that because the *Cramer* court did not directly address whether a policyholder seeking uninsured motorist benefits could recover under section 155 after an unreasonable delay in settling a claim, *Cramer* does not foreclose the claim against Founders. Therefore, according to Rodez's interpretation of *Cramer,* the circuit court's grant of Founders' motion for summary judgment was based on a misreading of the case.

¶ 29    Rodez reads *Cramer* too narrowly. To be clear, the broad and unmistakable holding in *Cramer* is that section 155 merely provides "an extracontractual remedy to policyholders who have suffered unreasonable and vexatious conduct by insurers with respect to a claim under the policy" and that the statute "presupposes an action on the policy." *Id.* at 522-23. Although the court did not foreclose the possibility of an insured's tort action against an insured for vexatious and unreasonable conduct, such actions require proof of different elements and remedy a different sort of harm than does the statute. *Id.* at 524-28. In fact, the court noted that where an insured alleges and actually proves elements of a separate tort, such as fraud, the insured may bring an independent tort action. *Id.* at 527. However, the court made clear that mere allegations of bad faith or unreasonable, vexatious conduct are insufficient to constitute a separate and independent tort. *Id.*

¶ 30    Here, in a single-count complaint, Rodez alleges that Founders' handling of her claim was "unreasonable" and "vexatious" in violation of section 155 of the Code. Although Rodez's complaint alleges insurer misconduct, it alleges neither a breach of contract claim, for which the statute provides an extracontractual remedy, nor a cognizable tort claim as contemplated by *Cramer*. In our view, the holding in *Cramer* could not be more clear in barring Rodez's alleged claim, and the circuit court's reading of *Cramer* could not be any more correct.

¶ 31    A more recent case, *Hoover v. Country Mutual Insurance Co.*, 2012 IL App (1st) 110939, is consistent with the holding in *Cramer*. Yet Rodez attempts to distinguish *Hoover* from our case here, asserting that the plaintiff there brought suit based on her insurer's refusal to pay on a standard fire insurance policy, whereas here, Rodez's suit is based on the insurer's alleged unreasonable delay in settling a claim on the policy. According to Rodez, this distinction is essential because section 155 recognizes three "causes of action" for which remedies are available: (1) refusal to pay on the policy, (2) refusal to pay the proper amount payable under the policy, or (3) for an unreasonable delay in settling a claim on the policy.

¶ 32    We first point out that the three statutory provisions cited by Rodez are not "causes of action," but instead identify the types of misconduct which might subject an insured to extracontractual remedies. See 215 ILCS 5/155(1). That said, in *Hoover*, plaintiffs filed a four-count complaint against their insurer and a company's employee. 2012 IL App (1st) 110939, ¶ 19. Relevant here, counts I and II of the complaint alleged breach of contract and bad faith. *Id.* The trial court dismissed all counts in the complaint as time barred. *Id.* ¶ 27.

¶ 33    On appeal, the plaintiffs contended that because their bad faith claim was not dependent on the policy's one-year statute of limitations provision, it was not an action for breach of contract and dismissal had been improper. *Id.* ¶ 38. In responding to the plaintiffs' argument, the court, citing *Cramer,* noted that section 155 created a "limited statutory exception" that allowed an insured to recover attorney fees and punitive damages from insurers that unreasonably delayed or denied payment of an insurance claim. *Id.* ¶ 39. However, to recover damages for a claim pursuant to section 155, a plaintiff had to also succeed in its overall action on the policy. *Id.* ¶ 40. The court further highlighted *Cramer*'s pronouncement that the tort of bad faith was not a separate and independent tort action recognized in Illinois. *Id.* ¶ 39. Accordingly, the *Hoover* court held that

because the plaintiffs' breach of contract claim was time barred, and further, because their bad faith claim was dependent on the success of their claim for breach, the plaintiffs' bad faith claim had been properly dismissed. *Id.* ¶ 41.

¶ 34    Rodez further cites *Buais v. Safeway Insurance Co.*, 275 Ill. App. 3d 587 (1995), as directly on point. In *Buais*, the plaintiff brought suit against its insurer alleging that its employer unreasonably and vexatiously refused to settle a claim. *Id.* at 589, 590. On appeal, the *Buais* court held that such conduct empowered the trial court to award fees and costs as authorized pursuant to section 155. *Id.* at 592-93. We note initially that *Buais* was decided prior to our supreme court's decision in *Cramer*. Thus, even were we inclined to embrace the holding in *Buais*, as Rodez entreats us, we could not. It is axiomatic that, as the intermediate reviewing court, we are without discretion to deviate from binding law of our supreme court, with no authority to overrule or modify its decisions. See *Gatreaux v. KKW Enterprises, LLC*, 2011 IL App (1st) 103482, ¶ 23.

¶ 35    Finally, Rodez urges us to reject the holding in *Kroutil v. State Farm Mutual Automobile Insurance Co.*, 2021 IL App (4th) 210238. In *Kroutil*, the fourth district appellate court upheld dismissal of a plaintiff insured's stand-alone claim for section 155 damages. *Id.* ¶ 21. There, the plaintiff initially sued the insurer for its refusal to pay damages for her underinsured motorist claim, as well as a claim for attorney fees pursuant to section 155 of the Code. *Id.* ¶ 5. The plaintiff obtained an arbitration award on her uninsured motorist claim, and amended her complaint which solely included a claim for section 155 damages. *Id.* ¶ 7. In dismissing the section 155 claim, the trial court held that the arbitration award did not constitute success on an action on the policy which, pursuant to *Cramer*, was necessary to support a section 155 claim. *Id.* ¶ 11. The appellate court affirmed. *Id.* ¶¶ 17-21.

¶ 36    Rodez correctly notes that we are not bound to follow the decisions of our sister jurisdictions in the event of a substantive conflict. See *Universal Metro Asian Services Ass'n v. Mahmood*, 2021 IL App (1st) 200584, ¶ 30 ("In the event conflicts arise among the districts, the circuit court is bound by the decision of the appellate court of the district in which it sits."). However, she incorrectly notes that the "law in Illinois requires that the circuit court follow *Buais*." In the same manner that this court is required to follow our supreme court's precedent, so also is the circuit court. See *Yakich v. Aulds*, 2019 IL 123667, ¶ 13 (where the supreme court has declared the law on any point, only the supreme court can overrule or modify its previous decision, and the lower judicial tribunals are not only bound by such decisions, but are duty bound to follow such decisions in similar cases). *Cramer* is not only controlling, but also dispositive of the issue here on appeal.[2] Accordingly, we find that the circuit court did not err in granting summary judgment in favor of Founders where, pursuant to *Cramer*, Rodez's claim for unreasonable delay and vexatious conduct, standing alone, does not constitute a separate and independent tort action for purposes of recovery under section 155 of the Code.

¶ 37                                III. CONCLUSION

¶ 38    For the reasons stated, we affirm the circuit court's grant of summary judgment in favor of Founders.

¶ 39    Affirmed.

---

[2]We further note that, subsequent to briefing in this case, Founders sought and was granted leave to cite *Moles v. Illinois Farmers Insurance Co.*, 2023 IL App (1st) 220853-U, as additional authority in support of the circuit court's grant of summary judgment. See Ill. S. Ct. R. 23(e)(1) (eff. Feb. 1, 2023) ("[A] nonprecedential order entered under subpart (b) of this rule on or after January 1, 2021, may be cited for persuasive purposes."). In *Moles*, another division in the First District held, as we do here, that pursuant to *Cramer,* section 155 does not permit a stand-alone claim but presupposes an action on the policy. 2023 IL App (1st) 220853-U, ¶¶ 2, 29.