2023 IL App (1st) 210567-U

No. 1-21-0567

Order filed March 31, 2023

FIFTH DIVISION

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| NATALIE D'AGOSTINO, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 19 CH 06907 |
| | ) | |
| ILLINOIS FARMERS INSURANCE COMPANY, | ) | Honorable |
| | ) | Allen P. Walker, |
| Defendant-Appellee. | ) | Judge Presiding. |

JUSTICE LYLE delivered the judgment of the court.
Justices Mitchell and Navarro concurred in the judgment.

**ORDER**

¶ 1     *Held*:  We affirm the judgment of the circuit court where the automobile insurance policy at issue is not ambiguous, the limitations period in the policy was not tolled, and the defendant insurance company did not waive the limitations period.

¶ 2     This appeal arises following the circuit court's grant of defendant's, Illinois Farmers Insurance Company (Farmers), motion to dismiss the complaint of plaintiff, Natalie D'Agostino, and the court's subsequent denial of Ms. D'Agostino's motion for reconsideration. Ms. D'Agostino's complaint was based on an underinsured motorist claim that she filed with Farmers

following her involvement in a motor vehicle accident. More than two years after she filed the claim with Farmers, Farmers denied the claim and determined that Ms. D'Agostino had failed to demand arbitration within the time limitation provided in the automobile insurance policy.

¶ 3    In her complaint, Ms. D'Agostino sought an order from the circuit court forcing Farmers to arbitrate her claim. She also sought attorney fees pursuant to section 155 of the Illinois Insurance Code (Insurance Code) (215 ILCS 5/155 (West 2004)) based on Farmers' "unreasonable and vexatious" conduct in handling the claim. Farmers filed a motion to dismiss the complaint pursuant to section 2-619 of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2018)) arguing that Ms. D'Agostino failed to make a timely demand for arbitration within the time allowed by the policy. The court granted the motion and subsequently denied Ms. D'Agostino's motion for reconsideration.

¶ 4    On appeal, Ms. D'Agostino maintains that the circuit court erred in granting Farmers' motion to dismiss and in denying her motion for reconsideration. She asserts that the limitations provision in the policy is ambiguous, that the limitations period was tolled, and that Farmers had waived its reliance on the limitations period by continuing to handle her claim after it claimed that the limitations period had lapsed. She also maintains that the court erred in denying her claim for fees and costs pursuant to section 155 of the Insurance Code. For the reasons that follow, we affirm the judgment of the circuit court.

¶ 5                                    I. BACKGROUND

¶ 6    In her complaint, Ms. D'Agostino alleged that on March 11, 2015, she was involved in a motor vehicle collision that caused her to suffer significant personal injury. She was not at fault in the accident, and filed a claim against the responsible driver's automobile insurance policy, which was issued by Founders Insurance Company (Founders). Ms. D'Agostino and her husband, Donald

D'Agostino, were insured by Farmers. In January 2017, Ms. D'Agostino entered into a settlement agreement with Founders for $20,000, the policy's limit.[1] Ms. D'Agostino filed an underinsured motorist claim with Farmers under her policy.

¶ 7 Ms. D'Agostino alleged that she complied with all policy requirements, but Farmers "failed and refused to pay the benefit" due under the policy. Ms. D'Agostino asserted that on May 6, 2019, she demanded arbitration of her underinsured motorist claim, but Farmers refused to proceed to arbitration. Ms. D'Agostino sought an order from the circuit court declaring (1) that their automobile policy was "in full force and effect;" (2) that she complied with all of the conditions under the policy; and (3) that Farmers must proceed to arbitration on her underinsured motorist claim. Ms. D'Agostino also sought costs, fees, and penalties pursuant to section 155 of the Insurance Code (215 ILCS 5/155 (West 2004)) based on Farmers' "unreasonable and vexatious conduct."

¶ 8 Farmers filed a motion to dismiss the complaint pursuant to section 2-619 of the Code (735 ILCS 5/2-619 (West 2018)). In its motion, Farmers contended that pursuant to the limitations language in the policy, Ms. D'Agostino failed to make a demand for arbitration within the time allowed. Farmers noted that the policy contained a limitations provision that provided that:

> "An insured person must agree to a settlement or begin a proceeding in arbitration by making written demand to us for such proceeding within two years from the date the limits of liability under any applicable bodily injury[,] liability bonds or policies have been exhausted by payment or judgment or settlement. Failure to comply with the time limit will relieve us of any obligation to the insured person under Coverage C-1."[2]

---

[1]Mr. D'Agostino also entered into a settlement agreement with Founders for $20,000.
[2]Coverage "C-1" concerns underinsured motorist claims.

Farmers alleged that it received notice that Ms. D'Agostino settled her claim with Founders and executed a settlement with Founders on December 3, 2016. That settlement was tendered to Founders on January 12, 2017. It was Farmer's contention that under the limitations provision, this constituted the exhaustion of the limits of liability of the Founders policy and triggered the two-year limitations period for Ms. D'Agostino to begin the arbitration process with Farmers. Farmers asserted that the deadline for Ms. D'Agostino's arbitration demand was therefore January 12, 2019. Farmers contended that Ms. D'Agostino failed to demand arbitration within the limitations period and was therefore barred from pursuing an underinsured motorist claim under the policy.

¶ 9    Farmers also asserted that the court should dismiss Ms. D'Agostino's claim for fees and costs under section 155 of the Insurance Code because it had a *bona fide* defense to the claim which demonstrated that its conduct could not be considered unreasonable and vexatious. Farmers maintained that granting its motion to dismiss also required the dismissal of the section 155 claim.

¶ 10    Ms. D'Agostino responded that although the signed settlement releases were forwarded to Founders in January 2017, corrected payment checks were not issued until July 19, 2018. Ms. D'Agostino stated that she submitted proof of loss to Farmers under the policy on August 15, 2015.

¶ 11    Ms. D'Agostino asserted that the limitations provision in the policy was ambiguous because it was susceptible to more than one interpretation. Ms. D'Agostino pointed out that the policy provided for three events that could trigger the running of the two-year limitations period for filing arbitration. These three events were when the limits of liability had been exhausted by payment, settlement, or judgment. She noted that the policy did not prioritize these events and there was "no requirement that the insurer or policyholder select one trigger over another at the time the claim is made or during the pendency of the claim."

¶ 12    Ms. D'Agostino maintained that Farmers erred in choosing to treat the initial issuance of settlement checks from Founders as the triggering date for the running of the limitations period because those checks were never cashed. She represented that the initial checks from Founders listed several lienholders and were returned to Founders, and therefore the issuance and rejection of the checks could not be considered "payment" sufficient to trigger the two-year limitations period. Ms. D'Agostino argued that a reasonable date to use as the triggering event would be the date that the final, corrected checks were issued from Founders on July 19, 2018. Ms. D'Agostino maintained that this would therefore make her arbitration demand on May 6, 2019, timely.

¶ 13    Ms. D'Agostino also contended that Farmers had waived the limitations provision by conducting itself in a manner which led Ms. D'Agostino to believe that her period to demand arbitration had not lapsed. She pointed out that Farmers' counsel sent a letter to her counsel on January 31, 2019, after Farmers alleges the limitations period had lapsed. This letter inquired as to whether Donald would be making a claim under the policy, but did not assert that the limitations period had expired. Ms. D'Agostino also noted that there had been a series of letters between her counsel and Farmers' counsel during the two years that her claim was pending, but none of these letters referenced the arbitration limitations period. She asserted that the lack of any reference to the time limitations for filing an arbitration demand in the January 2019 letter could reasonably lead her to believe that Farmers was not using the January 2017 settlement date as the triggering event for the limitations period.

¶ 14    Ms. D'Agostino next argued that the limitations provision was not "applicable" under Illinois insurance statutes. She maintained that she had complied with all of the policy requirements and conditions, and nevertheless Farmers denied her claim almost four years after she submitted her proof of loss. Ms. D'Agostino contended that under these circumstances, section

143.1 of the Insurance Code (215 ILCS 5/143.1 (West 2018)) provided for the tolling of the limitations period. Ms. D'Agostino argued that the running of the two-year limitations period was therefore tolled beginning on August 15, 2015, and began running again when the claim was denied on February 21, 2019. Ms. D'Agostino maintained that her arbitration demand, made less than two years later, was therefore timely.

¶ 15    Finally, Ms. D'Agostino contended that the limitations provision did not apply to her claim for unreasonable and vexatious conduct under section 155. Ms. D'Agostino maintained that "[d]ue to its remedial nature, two year limitations periods for actions for statutory penalties do not apply to actions brought under section 155."

¶ 16    The circuit court granted Farmers' motion to dismiss on December 23, 2020. The court's order reflects that it granted Farmers' motion "[f]or the reasons stated at the hearing." There is no report of proceedings from said hearing included in the record filed on appeal.

¶ 17    Ms. D'Agostino filed a motion for reconsideration of the court's ruling contending that the court failed to adequately consider the letter from Farmers to Ms. D'Agostino's counsel on January 31, 2019. Ms. D'Agostino asserted that this letter showed that Farmers was continuing to handle the claim, and did not reference any intention to consider the claim closed for failure to demand arbitration by January 16, 2019,[3] or earlier. Ms. D'Agostino further contended that the court erred in finding that the tolling provision in section 143.1 of the Insurance Code was applicable only to lawsuits. Ms. D'Agostino noted that some decisions of the appellate court had found that the tolling principles in that section applied to the time to demand arbitration as well. Ms. D'Agostino maintained that the trial court therefore erred in finding that the limitations period to demand

[3]Two years from the date Founders issued the initial settlement checks.

arbitration was not tolled beginning on August 15, 2015, when Ms. D'Agostino submitted her proof of loss to Farmers.

¶ 18    The court denied Ms. D'Agostino's motion for reconsideration in a written order. In its order, the court addressed the letter of January 31, 2019, which was attached to the motion for reconsideration. The court noted that the letter had been previously mentioned in both the complaint and Ms. D'Agostino's response to the motion to dismiss, but it was not provided to the court until it was attached as an exhibit to the motion for reconsideration. The court found that the letter was neither an express nor implied waiver of the limitations provision because it did not suggest that Farmers considered Ms. D'Agostino's claim as "pending." The letter only inquired into whether Donald would also be filing an underinsured motorist claim. The court concluded that it therefore properly rejected Ms. D'Agostino's waiver claim.

¶ 19    The court found, however, that section 143.1 was applicable to Ms. D'Agostino's demand for arbitration. The trial court noted that the appellate court had "broadly" applied section 143.1 to policy language that both limited an insured's time period to bring a lawsuit and the time period to bring an arbitration demand. Nonetheless, the court found that Ms. D'Agostino's arbitration demand was untimely despite the applicability of the tolling statute. The court noted that the statute tolled the limitations period from the date proof of loss was filed until the date the claim was denied. The court observed that Ms. D'Agostino claimed that she provided her proof of loss to Farmers on August 15, 2015, but Ms. D'Agostino had failed to present any evidence of what material she produced on that date. The court noted that Farmers sent several letters to Ms. D'Agostino between November 2016 and November 2018 requesting medical records and other information to evaluate Ms. D'Agostino's claim, which suggested that Ms. D'Agostino had not yet provided adequate proof of loss. Ms. D'Agostino's counsel sent medical records and bills to

Farmers on November 27, 2018, which the court determined was the date that Ms. D'Agostino submitted adequate proof of loss to begin the tolling period.

¶ 20      The court determined that tolling ended on February 21, 2019, when Farmers denied Ms. D'Agostino's claim. The court therefore found that Ms. D'Agostino's claim was tolled for a total of 86 days from November 27, 2018, through February 21, 2019. Relying on the language in the policy, the court noted that Ms. D'Agostino had two years from when the settlement releases were tendered to Founders on January 12, 2017, to demand arbitration. That two-year period was further extended 86 days by the tolling provision of section 143.1. The court concluded that Ms. D'Agostino therefore had until April 8, 2019, to demand arbitration, but Ms. D'Agostino did not make her arbitration demand until May 6, 2019. The court found that Ms. D'Agostino's arbitration demand was therefore time-barred despite the applicability of the tolling provision. As a result, the court found that it did not err in granting Farmers' motion to dismiss and denied Ms. D'Agostino's motion for reconsideration. Ms. D'Agostino filed a timely notice of appeal from the circuit court's ruling on May 18, 2021. We find that we have jurisdiction to consider this matter because Ms. D'Agostino filed a notice of appeal within 30 days after the circuit court's order disposing of her motion for reconsideration. See Ill. S. Ct. R. 303 (eff. Jul. 1, 2017).

¶ 21                                    II. ANALYSIS

¶ 22      On appeal, Ms. D'Agostino contends that the trial court erred in dismissing her complaint where the limitations provision in the policy was ambiguous. Ms. D'Agostino also asserts that Farmers waived its reliance on its "selected" triggering event because it continued to correspond with her counsel and handle her underinsured motorist claim after the claimed expiration date of the limitations period. She maintains that the letter from January 31, 2019, demonstrated Farmers' implied waiver of the limitations period. Ms. D'Agostino further maintains that the limitations

period was tolled because she provided proof of loss well before the triggering date claimed by Farmers and that the circuit court erred in dismissing her claim for fees and costs.

¶ 23                                A. Standard of Review

¶ 24    Here, the court granted Farmers' motion to dismiss Ms. D'Agostino's complaint pursuant to section 2-619(a)(9) of the Code. 735 ILCS 5/2-619(a)(9) (West 2018). A motion to dismiss based on section 2-619 admits the legal sufficiency of the complaint, but asserts that affirmative matters based on the face of the complaint or based on external factors defeat the plaintiff's claim. *Neppl v. Murphy*, 316 Ill. App. 3d 581, 584 (2000). "When ruling on such motions, a court must accept as true all well-pleaded facts, as well as any reasonable inferences that may arise from them [citation], but a court cannot accept as true mere conclusions unsupported by specific facts [citation]." *Patrick Engineering, Inc. v. City of Naperville*, 2012 IL 113148, ¶ 31. We review the court's ruling on a motion to dismiss the complaint pursuant to section 2-619 *de novo. Krilich v. American National Bank & Trust Co. of Chicago*, 334 Ill. App. 3d 563, 569 (2002).

¶ 25                                B. Ambiguity

¶ 26    Ms. D'Agostino first contends that the circuit court erred in granting Farmers' motion to dismiss because the limitations provision in the policy is ambiguous. Ms. D'Agostino points out that the limitations provision provides for three events that can trigger the running of the two-year limitations for demanding arbitration. She points out that the policy does not prioritize or define these terms, creating ambiguity.

¶ 27    "An insurance policy is a contract, and the general rules governing the interpretation of other types of contracts also govern the interpretation of insurance policies." *Hobbs v. Hartford Insurance Co. of the Midwest*, 214 Ill. 2d 11, 17 (2005). When construing insurance policies, the policy should be enforced as written unless the policy provision in question is ambiguous or

contravenes public policy. *Pahn v. State Farm Mutual Automobile Insurance Co.*, 291 Ill. App. 3d 343, 345 (1997). An ambiguity exists where the policy language is subject to more than one reasonable interpretation. *Hobbs*, 214 Ill. 2d at 17. "Although policy terms that limit an insurer's liability will be liberally construed in favor of coverage, this rule of construction only comes into play when the policy is ambiguous." *Id.*

¶ 28     Under the terms of the limitations provision in the policy, the insured person has two years from the date the limits of liability under the policy of the underinsured motorist have been exhausted by payment, judgment, or settlement. Farmers asserted, and the trial court agreed,[4] that the limitations period began to run when Ms. D'Agostino settled her claims with Founders. Ms. D'Agostino signed the release settling her claim with Founders on December 3, 2016, and the settlement agreement was transmitted to Founders on January 12, 2017. Farmers therefore maintained that January 12, 2017, was the date the two-year limitations period for Ms. D'Agostino's arbitration demand began to run.

¶ 29     Ms. D'Agostino contends, however, that it was unreasonable for Farmers to select that date as the triggering event. She points out that Founders initially issued settlement checks to her in accordance with the settlement agreement on January 16, 2017. Ms. D'Agostino maintains, however, that those checks were improper and not able to be cashed because they contained the names of other lienholders. Ms. D'Agostino claims that those checks were not deposited and were returned to Founders. Ms. D'Agostino contends that Founders did not issue proper checks until

---

[4]As noted, the trial court's oral ruling on Farmers' motion to dismiss is not included in the record filed on appeal. However, the trial court does reference some of the findings it made in that ruling in its written order denying Ms. D'Agostino's motion for reconsideration.

September 18, 2018. She maintains that this date is a reasonable date to use in determining the trigger date for the limitations period.

¶ 30    She asserts that the date the final payable checks were delivered is the date that the limits of the Founders policy had been "exhausted." She maintains that the Founders' policy could only be said to have been "exhausted" when the insurer properly paid its obligation. Ms. D'Agostino also contends that the use of the word "settlement" in the policy is ambiguous because the date of a "settlement" could be various dates depending on the definition—for example, the date the settlement agreement is signed or the date the signed settlement agreement is transmitted to the insurer—but none of those events "exhaust" the policy.

¶ 31    This argument, however, does not show that the policy is ambiguous and misconstrues the term "exhausted" in this context. The policy provides for three distinct events that can trigger the running of the limitations period. These events are the exhaustion of the policy limits by settlement, payment, or judgment. Any one of these three triggers the limitations period and begins the two-year limitation period for demanding arbitration. It is immaterial that the limitations provision does not prioritize them because the focus is on the date of "exhaust[ion]," not on which of the three triggering events precipitated the exhaustion. Ms. D'Agostino focuses on which of the triggering events Farmers "selected," but Farmers did not select any event; the limitations provision was triggered by the settlement of her action with Founders.

¶ 32    This court has recognized that a settlement agreement between an insured and an insurer exhausts the insurer's coverage where the intent of the parties entering into the agreement is that the settlement represents the policy's limits even where the settlement monies are distributed in a "piecemeal fashion." See *American Family Mutual Insurance Co. v. Hinde*, 302 Ill. App. 3d 227, 233 (1999); see also, *Douglas v. Allied American Insurance*, 312 Ill. App. 3d 535, 540-41 (2000))

(noting that a settlement—or judgment—exhausts an insurer's policy limits because it " 'legally obligate[s]' " the insurer to pay the damages.). Here, Ms. D'Agostino entered into a settlement agreement with Founders for its policy limit of $20,000. Once that settlement agreement was transmitted to Founders and its obligation to Ms. D'Agostino became finalized, its limits of liability had been "exhausted." It is inconsequential that Founders tendered proper checks to Ms. D'Agostino much later because this had no bearing on whether the policy limits had been exhausted by the settlement agreement. Accordingly, we find that the limitations provision is not ambiguous.

¶ 33                                C. Tolling

¶ 34    Ms. D'Agostino next contends that the two-year limitations period was tolled under section 143.1 of the Insurance Code because she sent her proof of loss to Farmers in August 2015, before the claimed trigger date, and before Farmers denied her claim. Section 143.1 of the Insurance Code provides that:

> "Whenever any policy or contract for insurance, except life, accident and health, fidelity and surety, and ocean marine policies, contains a provision limiting the period within which the insured may bring suit, the running of such period is tolled from the date proof of loss is filed, in whatever form is required by the policy, until the date the claim is denied in whole or in part." 215 ILCS 5/143.1 (West 2018).

Although section 143.1 refers specifically to "suit[s]," Ms. D'Agostino asserts that the tolling provision statute applies with equal force to arbitration demands. Farmers responds that the section explicitly refers only to suits and does not apply to arbitration demands. Farmers also maintains that Ms. D'Agostino introduced insufficient evidence of the proof of loss that she submitted in August 2015 to toll the limitations period.

¶ 35    Ms. D'Agostino claims that she provided proof of loss to Farmers on August 13, 2015.[5] However, she did not introduce any evidence in the circuit court of what information she provided on that date. Nevertheless, Ms. D'Agostino asserts that the materials that she submitted on that date must have been sufficient to constitute proof of loss because it allowed Farmers to evaluate her claim. The record shows, however, that between November 2016 and November 2018 Farmers was sending letters to Ms. D'Agostino's counsel requesting medical records and other information so that it could evaluate Ms. D'Agostino's claim.

¶ 36    Specifically, in November 2016, Farmers sent a letter to Ms. D'Agostino's counsel asking him to send his "client's medical records, copies of bills and any other supporting documents" so that Farmers could "evaluate this claim." Farmers sent five more letters over the course of the next two years each time requesting updated medical information. Ms. D'Agostino's counsel did not provide Farmers with updated medical information until November 27, 2018. Shortly thereafter, Farmers informed Ms. D'Agostino that it was denying her claim and determined that she had failed to request arbitration within the limitations period.

¶ 37    These letters demonstrate that whatever materials Ms. D'Agostino may have submitted in August 2015 were insufficient to trigger the tolling statute because they did not satisfy the proof of loss standard required by the policy.[6] This is apparent based on Farmers' letters requesting Ms. D'Agostino's medical information.

---

[5]Before the circuit court, Ms. D'Agostino claimed that she submitted proof of loss to Farmers on August 15, 2015, and the letters from Farmers to Ms. D'Agostino reflect that same date. The circuit court also relied on the date of August 15, 2015. In her briefs before this court, however, Ms. D'Agostino maintains that she submitted proof of loss to Farmers on August 13, 2015, and Farmers' response brief adopts the same date. We find, however, that the discrepancy is immaterial to our resolution of this case.

[6]We observe that the only reference to proof of loss in the policy here is that a person claiming coverage under the policy must "[p]rovide any written proofs of loss we require."

¶ 38     We find Ms. D'Agostino's reliance on *Tutson*, 409 Ill. App. 3d 233 unpersuasive. In *Tutson*, the plaintiff was involved in an automobile accident and submitted a claim to her insurance company. *Id.* at 234. The plaintiff's attorney sent a lien letter to the insurance company, who acknowledged receipt of the lien letter and sent the plaintiff an "Accident Report Form." *Id.* The plaintiff did not complete the "Accident Report Form." *Id.* About a year later, the insurance company notified the plaintiff's attorney that it was in possession of a police report from the accident. *Id.* at 235. The plaintiff's attorney then sent the insurance company the plaintiff's medical bills and records and made a written demand for payment under the policy. *Id.* At the insurance company's request, the plaintiff also submitted to an examination under oath. *Id.* A few months later, the insurance company requested an ambulance invoice and the name and unit numbers of the police officers and paramedics involved. *Id.* The insurance company represented that "[u]pon receipt of the requested information we will then be in a position to evaluate your client's personal injury claim." *Id.* The letter also stated that, "[a]t this time we are unable to accept or reject your demand" for payment of the policy's limit. *Id.* A few months later, in accordance with the letter, the plaintiff's attorney submitted an itemized ambulance bill, a paramedics report, and an "Incident Detail" from the Chicago fire department. *Id.* The insurance company did not request any additional information. *Id.*

¶ 39     Several months later, the plaintiff made a demand for arbitration that was filed outside the two-year limitations period in the policy. *Id.* The policy in that case contained a provision that provided that "any suit, action or arbitration will be barred unless commenced within two (2) years after the date of the accident." *Id.* The insurance company filed a complaint for a declaratory judgment arguing that it was not obligated to arbitrate or settle the plaintiff's claim because she did not demand arbitration within the two-year time limitation. *Id.* at 236. The plaintiff filed a

motion for summary judgment contending, *inter alia*, that section 143.1 of the Insurance Code tolled the limitations period. *Id.* The insurance company responded that section 143.1 did not toll the limitations period because the plaintiff did not file *adequate* proof loss in the form the "Accident Report Form" as required by the policy. *Id.* The trial court found in favor of the insurance company. *Id.*

¶ 40    On appeal, this court rejected the insurance company's arguments that section 143.1 did not serve to toll the limitations period because the plaintiff had failed to provide proof of loss. *Id.* at 238-39. The court observed that during the two years following her accident, the plaintiff had provided "information about her loss sufficient to constitute proof of loss," including "a police report from the accident, an itemized ambulance bill, a paramedics report, an 'Incident Detail' from the Chicago fire department," medical bills and records, and a sworn statement. The court found that this information was sufficient for the insurance company to identify the " 'particulars' " of the loss as required by the policy's proof of loss provision. *Id.* The court determined that the insurance company had sufficient information based on these materials to "either pay the claim or deny it." *Id.*

¶ 41    Here, there is no evidence of what information Ms. D'Agostino submitted to Farmers before November 27, 2018. What is clear, however, is that Farmers considered it insufficient to identify the "particulars" of the loss and to either pay or deny this claim. This is evidenced by Farmers' November 2016 letter where it asked for information from Ms. D'Agostino so that Farmers could evaluate her claim. Farmers then sent a series of letters to Ms. D'Agostino over the next two years asking for more information. Ms. D'Agostino did not submit the requested information until November 2018.

¶ 42    In contrast, the plaintiff in *Tutson* continually submitted requested information during the time her claim was pending so that the insurance company could evaluate her claim. The insurance company in *Tutson* specifically told the plaintiff that it would be in a position to evaluate her personal injury claim once she submitted the requested information. The plaintiff complied, but the insurance company nonetheless argued that the plaintiff had not submitted sufficient proof of loss. Despite Ms. D'Agostino's assertions to the contrary, the holding in *Tutson* actually supports the circuit court's ruling here that Ms. D'Agostino did not provide sufficient proof of loss until November 27, 2018. At that point, Farmers was in possession of all of the information it had requested. We therefore reject Ms. D'Agostino's contention that the limitations provision was tolled beginning in August 2015.

¶ 43    Finally, we find that it is unnecessary for us resolve the question of whether the tolling principles of section 143.1 apply to arbitration demands in addition to "suit[s]." Ms. D'Agostino maintains, citing *Tutson* and *Hermanson v. Country Mutual Insurance Co.*, 267 Ill. App. 3d 1031 (1994), that this court has broadly applied the tolling principles of section 143.1 to both lawsuits and arbitration demands. Farmers responds that the statute explicitly refers only to suits and to the extent that these cases stand for the proposition that the tolling principles can be applied to arbitrations, they should be "abrogated."

¶ 44    Nonetheless, even if we were to find that tolling applies in this case, Ms. D'Agostino's arbitration demand would still be untimely, as the circuit court recognized. Ms. D'Agostino submitted proof of loss on November 27, 2018. This is the date that tolling would begin. Tolling would end on February 21, 2019, the date when Farmers denied Ms. D'Agostino's claim. This results in a total of 86 days of tolling. Ms. D'Agostino sent the settlement release to Founders on January 12, 2017. Under the terms of the policy, she would therefore have until January 12, 2019,

two years after the date of the settlement, to demand arbitration. Accounting for the additional 86 days of tolling, Ms. D'Agostino would have until April 8, 2019, to demand arbitration. Ms. D'Agostino did not demand arbitration until May 6, 2019. Accordingly, we find that Ms. D'Agostino's arbitration demand would be time-barred even if section 143.1 applied to arbitration demands. We therefore find that Ms. D'Agostino's arbitration demand was untimely.

¶ 45                                    D. Waiver

¶ 46    Ms. D'Agostino next asserts that Farmers waived the limitations provision because it continued "handling" her claim even after January 12, 2019, the date that Farmers is now claiming as the expiration of the two-year limitations period. Ms. D'Agostino maintains that this continued handling of the claim led her to believe that the claim was still open, and that Farmers was not asserting the limitations provision.

¶ 47    "Waiver consists of 'the intentional relinquishment of a known right' and may be express or implied from the insurer's acts, words, conduct, or knowledge." *American States Insurance Co. v. National Cycle, Inc.*, 260 Ill. App. 3d 299, 305-06 (1994). Here, Ms. D'Agostino's waiver argument is based on a letter Farmers sent to her counsel on January 31, 2019. In that letter, Farmers' counsel stated: "[P]lease advise if an underinsured motorist claim is being made on behalf of Donald D'Agostino, as we have not received medical specials from your office to date." Ms. D'Agostino maintains that this letter established that Farmers was continuing to handle her pending underinsured motorist claim, and did not mention that Farmers considered the claim closed based on her failure to demand arbitration by January 12, 2019.

¶ 48    Because Ms. D'Agostino is claiming waiver, she has the burden of proving Farmers' intentional relinquishment of its right to assert the limitations provision in the policy. See *Buchalo v. Country Mutual Insurance Co.*, 83 Ill. App. 3d 1040, 1046 (1980) (stating that the party claiming

- 17 -

waiver bears the burden of proof). In this case, Farmers plainly did not expressly waive its rights, and therefore Ms. D'Agostino's arguments focus on implied waiver. "Implied waiver of a legal right must be proved by a clear, unequivocal, and decisive act of the party who is alleged to have committed waiver." *Ryder v. Bank of Hickory Hills*, 146 Ill. 2d 98, 105 (1991). " 'An implied waiver may arise where a person against whom the waiver is asserted has pursued such a course of conduct as to sufficiently evidence an *intention* to waive a right or where his conduct is inconsistent with any other intention than to waive it.' " (Emphasis added.) *Id.* (quoting *Kane v. American National Bank & Trust Co.*, 21 Ill. App. 3d 1046, 1052 (1974)).

¶ 49 In this case, we cannot say that Farmers' letter inquiring into whether Donald would be submitting a claim represented a clear and unequivocal act intended to waive the two-year limitations period in the policy. Ms. D'Agostino maintains that this communication by Farmers led her to reasonably believe that her claim was still open, but the letter does not even reference her claim. Nor does the letter reference the limitations provision. The letter merely represents Farmers due diligence in inquiring into whether Donald was intending to submit a claim under the policy, and does not demonstrate Farmers' intention to waive the limitations period. There is nothing in the letter that is inconsistent with Farmers' position that the two-year limitations period had run on Ms. D'Agostino's claim. Accordingly, we find that Ms. D'Agostino has failed to demonstrate that Farmers waived the limitations provision.

¶ 50 E. Section 155 Penalties

¶ 51 Finally, Ms. D'Agostino maintains that the court erred in dismissing her claim for fees, costs, and other penalties pursuant to section 155 of the Insurance Code (215 ILCS 5/155 (West 2004)) because limitations periods do not apply to claims under this section.

¶ 52 Section 155 of the Insurance Code provides:

"(1) In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts:

(a) 60% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;

(b) $60,000;

(c) the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action." 215 ILCS 5/155(1) (West 2004).

Ms. D'Agostino contends that she should be awarded fees and costs under section 155 based on Farmers' vexations and unreasonable delay in settling the claim.

¶ 53   This court has recognized, however, that in order for a plaintiff to recover under section 155, the plaintiff must also succeed in the action on the policy. *Hoover v. Country Mutual Insurance Co.*, 2012 IL App (1st) 110939, ¶ 40; see also, *Cramer v. Insurance Exchange Agency*, 174 Ill. 2d 513, 522-23 (1996) ("[T]he statute provides an extracontractual remedy for policyholders who have suffered unreasonable and vexatious conduct by insurers with respect to a claim under the policy. It presupposes an action on the policy. As such, nothing in the statute addresses tortious conduct or tort liability in general. The statute simply provides an extracontractual remedy to an action on a policy."). In essence, an insurer cannot be liable for

section 155 relief where no benefits are owed. *Martin v. Illinois Farmers Insurance*, 318 Ill. App. 3d 751, 764 (2000). Having found that Ms. D'Agostino is not entitled to benefits under the policy, it necessarily follows that her claim for section 155 fees and costs must also fail. Accordingly, we find that the circuit court did not err in rejecting Ms. D'Agostino's claim for section 155 fees and costs where her action was time barred and the claim for bad faith was dependent on the success of the underlying action on the policy. *Hoover*, 2012 IL App (1st) 110939, ¶ 41.

¶ 54                                    III. CONCLUSION

¶ 55    For the reasons stated, we affirm the judgment of the circuit court of Cook County.

¶ 56    Affirmed.