2026 IL App (1st) 250037
No. 1-25-0037
Opinion filed May 29, 2026

Sixth Division

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | |
|---|---|
| NANCY BECKER-OTHMAN | ) Appeal from the |
| | ) Circuit Court of |
| Plaintiff-Appellant, | ) Cook County. |
| | ) |
| v. | ) |
| | ) No. 21 CH 04763 |
| STATE FARM MUTUAL AUTOMOBILE | ) |
| INSURANCE COMPANY, | ) Honorable |
| | ) Michael T. Mullen, |
| Defendant-Appellee. | ) Judge, presiding. |
| | ) |

JUSTICE HYMAN delivered the judgment of the court, with opinion.
Justices Pucinski and Gamrath concurred in the judgment and opinion.

**OPINION**

¶ 1     Nancy Becker-Othman injured her shoulder in a car accident, necessitating surgery. The at-fault driver tendered her policy limits. Becker-Othman then sought the balance of her underinsured motorist coverage claim from her insurer, State Farm Mutual Automobile Insurance Company.

¶ 2     State Farm retained Dr. Mark Hutchinson to review Becker-Othman's medical records. He initially opined that the accident did not cause her shoulder injury. Ultimately, however, he

agreed that she could benefit from surgery, and State Farm paid the underinsured motorist claim in full, more than three years after the accident.

¶ 3 Becker-Othman sued State Farm, alleging breach of contract (count I), bad faith for delay of payment under section 155 of the Illinois Insurance Code (215 ILCS 5/155 (West 2024)) (count II), and an implied private right of action under title 50 of the Illinois Administrative Code (50 Ill. Adm. Code 919.50(a)(1) (2004)), based on State Farm's failure to provide a reasonable written explanation regarding her claim within 30 days of determining liability (count III). The trial court dismissed count III, with prejudice, finding that title 50 does not create a private cause of action. The court granted summary judgment on the breach of contract and bad faith claims, finding that State Farm made a good faith determination to pay after a reasonable investigation.

¶ 4 Becker-Othman contends the trial court erred by (i) granting summary judgment, (ii) dismissing her private right of action under title 50 (*id.*), (iii) denying her request for additional discovery after State Farm moved for summary judgment, and (iv) requiring her to pay Dr. Hutchinson's deposition fee.

¶ 5 The trial court properly granted summary judgment because Becker-Othman's amended complaint failed to state a claim for breach of contract and section 155 does not create a standalone cause of action. Nor did the trial court abuse its discretion in denying her request for additional discovery or requiring her to pay Dr. Hutchinson's deposition fee. We affirm.

¶ 6                                          BACKGROUND

¶ 7 Becker-Othman was injured in an automobile accident when another driver rear-ended her while she was stopped at a red light. Becker-Othman's husband called their insurer, State Farm,

to report the accident and advised that his wife was complaining of a headache, neck pain, and right shoulder pain.

¶ 8 The at-fault driver tendered $25,000. Becker-Othman then sought $75,000, the balance of her $100,000 in underinsured motorist coverage. While State Farm investigated the claim, Becker-Othman demanded arbitration. State Farm responded by sending Becker-Othman $4,721.36 as its "initial offer" and agreeing to arbitrate the balance.

¶ 9 State Farm retained the Taylor Miller law firm, which deposed Becker-Othman and retained Dr. Mark Hutchinson to review her medical records.

¶ 10 At her deposition, Becker-Othman testified that she told the responding police officer that she had a headache and felt dizzy but declined immediate medical treatment. When she returned home, her headache worsened and her shoulder and neck began to hurt, prompting her to go to the emergency room. A CT scan revealed no structural damage to her head or neck. The treating physician instructed her to take muscle relaxers and Advil and follow up with her primary care physician.

¶ 11 Becker-Othman's primary care physician referred her to physical therapy. When that provided only temporary relief, she consulted orthopedic surgeon Dr. Terry Younger. Initially, Dr. Younger prescribed conservative treatment, including physical therapy and steroid injections. These measures provided temporary relief but failed to eliminate her pain. About a year into treatment, Younger recommended shoulder surgery.

¶ 12 Dr. Younger testified by deposition that an MRI of Becker-Othman's shoulder revealed cysts, suggesting a labrum tear. He believed surgery could improve her condition by as much as 80%. Although the MRI did not reveal a rotator cuff injury, Younger could not know for certain until surgery.

¶ 13    State Farm's retained physician, Dr. Mark Hutchinson, issued four reports concluding that Becker-Othman's shoulder injury was unrelated to the accident. He based that opinion largely on the absence of an immediate complaint of shoulder pain. Hutchinson later acknowledged that Becker-Othman's deposition established she complained of shoulder pain at the emergency room on the day of the accident and that his third report incorrectly reiterated that she had not immediately complained of shoulder pain. His fourth report removed that statement and recognized that immediate onset of shoulder pain suggested she had a more significant injury than he previously believed. Although he continued to opine that the shoulder pain was unrelated to the accident, he stated that if the accident caused the injury, Becker-Othman had a favorable surgical prognosis based on her positive response to steroid injections.

¶ 14    In September 2021, about three years after the accident and roughly two weeks after receiving Hutchinson's final report, State Farm paid Becker-Othman $75,000 in underinsured motorist benefits and cancelled the arbitration.

¶ 15    Becker-Othman sued State Farm. Her third amended complaint alleges breach of contract for failing to adjust and timely pay her claim (count I), vexatious and unreasonable delay of payment under section 155 of the Insurance Code (215 ILCS 5/155 (West 2024)) (count II), and an implied private right of action under the Administrative Code (50 Ill. Adm. Code 919.50(a) (2004)) (count III). (The trial court had previously dismissed count III with prejudice; Becker-Othman repleaded to preserve the issue for appeal.) Becker-Othman sought $4,522.85 in costs incurred in preparing for the cancelled arbitration, attorney's fees, section 155 penalties, and prejudgment interest.

¶ 16    During discovery, Becker-Othman sought to depose Dr. Hutchinson. He agreed to appear if Becker-Othman paid his $700 hourly fee. Becker-Othman moved to require State Farm to

pay the fee, arguing Hutchinson qualified as State Farm's controlled expert witness under Illinois Supreme Court Rule 213(f)(3) (eff. Jan. 1, 2018) and that Illinois Supreme Court Rule 208(e) (eff. Jan 1. 2018) requires each party to pay fees charged by its own Rule 213(f)(3) expert. State Farm acknowledged Hutchinson would have testified as an expert had the matter proceeded to arbitration but maintained he would not testify regarding breach of contract or bad faith. After a hearing, the trial court denied Becker-Othman's request, finding that if she chose to depose Hutchinson and call him as a witness, she bore responsibility for the fee.

¶ 17    Becker-Othman also deposed State Farm claims representatives and managers regarding their handling of her claim between May 2018 through September 2021. Nonetheless, she sought additional discovery and moved to compel production of (i) allegedly missing policies and procedures, (ii) employees who supervised claim specialists assigned to her file, (iii) metadata relating to her file, and (iv) communications between State Farm and its outside law firm to determine whether claims adjusters relied on those communications in making claim decisions. Becker-Othman also sought leave to re-depose three State Farm employees about their communications with the law firm.

¶ 18    The trial court denied the request, finding that (i) Becker-Othman had not established the relevance of State Farm's policies and procedures, (ii) additional depositions of employees was untimely, coming after discovery closed, and (iii) the metadata was unreasonable, disproportionate, and irrelevant to her bad faith claim. The court also reaffirmed that the attorney-client privilege protected communications between State Farm and its outside counsel.

¶ 19    After discovery closed, State Farm moved for summary judgment. Becker-Othman renewed her request for additional discovery under Illinois Supreme Court Rule 191(b) (eff.

Jan. 4, 2013), supported by affidavits from herself and her attorney. The trial court denied the motion, noting that it had already ruled on the discovery requests, and Becker-Othman presented no basis for reconsideration. The court also found the affidavits too general and conclusory.

¶ 20   After a hearing, the trial court granted summary judgment. It ruled from the bench and entered a written order memorializing its rulings. The court found no evidence of breach of contract because "[n]othing in the State Farm policy nor anything that has been identified within the plaintiff's Third Amended Complaint required State Farm to adjust her claim within a certain timeframe."

¶ 21   Addressing bad faith, the trial court stated that "the undisputed facts *** establish that the underlying claim involved a *bona fide* dispute regarding the nature and extent of appropriate policy benefits." The court noted that Hutchinson's testimony established that State Farm reasonably relied on his opinion that Becker-Othman's injuries were unrelated to the accident. "When Dr. Hutchinson's initial opinion expanded, evolved or softened *** State Farm elected to revise its coverage position and pay the remaining policy limits." The court concluded that "[t]his case is nothing more than a good faith determination to pay the claim after a reasonable investigation pursuant to the terms of the applicable State Farm policy." The court also reaffirmed its dismissal with prejudice of count III.

¶ 22                                    ANALYSIS

¶ 23                               Standard of Review

¶ 24   Summary judgment applies where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c)

(West 2024). Courts construe the pleadings, depositions, admissions, and affidavits strictly against the movant and liberally in favor of the nonmovant. *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 43 (2004). "A triable issue precluding summary judgment exists where the material facts are disputed, or where, the material facts being undisputed, reasonable persons might draw different inferences from the undisputed facts." *Id.* Our review is *de novo*. *Argonaut Midwest Insurance Co. v. Morales*, 2014 IL App (1st) 130745, ¶ 14. We may affirm on any basis supported by the record. *Lee v. Six Flags Theme Parks, Inc.*, 2014 IL App (1st) 130771, ¶ 62.

¶ 25                                   Breach of Contract

¶ 26        Becker-Othman contends the trial court erred in granting summary judgment on her breach of contract claim. The trial court found nothing in the insurance policy required State Farm to adjust her claim within a specified time frame. Becker-Othman does not dispute that finding. Instead, she argues State Farm violated the policy's implied covenant of good faith and fair dealing, as well as the reasonable expectations doctrine, by not paying her claim sooner.

¶ 27        Every contract contains an implied covenant of good faith and fair dealing. *Northern Trust Co. v. VIII South Michigan Associates*, 276 Ill. App. 3d 355, 367 (1995). The covenant requires a party vested with contractual discretion to exercise it reasonably, not arbitrarily, capriciously, or in a manner inconsistent with the parties' reasonable expectations. *Id.* The covenant does not impose actionable obligations. *Id.* at 368. Instead, it functions as a rule of construction, ensuring that a party does not exercise contractual discretion in a way that defeats the contract's purpose. *Voyles v. Sandia Mortgage Corp.*, 196 Ill. 2d 288, 296-97 (2001). Reading a timing requirement into the policy would rewrite the parties' bargain.

¶ 28     Nor does the reasonable expectations doctrine aid Becker-Othman. Under this doctrine, " '[t]he objectively reasonable expectation of all applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations.' " *Smagala v. Owen*, 307 Ill. App. 3d 213, 219 (1999) (quoting Robert E. Keeton, Basic Text on Insurance Law § 6.3, at 351 (1971)). The doctrine serves as a tool of construction when policy language is ambiguous. *Id.* Becker-Othman did not assert ambiguity in the policy language, so the doctrine does not apply. See *id.*

¶ 29                              Section 155 of Insurance Code

¶ 30     Most of Becker-Othman's brief focuses on her claim for vexatious and unreasonable delay under section 155 of the Insurance Code.

¶ 31     Section 155 permits a plaintiff to recover attorney's fees, costs, and statutory damages from an insurer that unreasonably delays or denies payment of a claim. *Hoover v. Country Mutual Insurance Co.*, 2012 IL App (1st) 110939, ¶ 39 (citing *Cramer v. Insurance Exchange Agency*, 174 Ill. 2d 513, 521 (1996)). In *Cramer*, our supreme court explained that section 155 "provides an extracontractual remedy to an action on a policy" and "presupposes an action on the policy." *Cramer*, 174 Ill. 2d at 523-24. Section 155 does not create an independent tort. *Id.* at 523-27. Thus, "for a plaintiff to recover under section 155, [plaintiff] must also succeed in the action on the policy." *Hoover*, 2012 IL App (1st) 110939, ¶ 40 (citing *Cramer*, 174 Ill. 2d at 524).

¶ 32     Becker-Othman argues she "succeeded" because State Farm paid the policy limits on her underinsured motorist claim and that payment does not defeat her section 155 claim. For support, she relies primarily on *McGee v. State Farm Fire & Casualty Co.*, 315 Ill. App. 3d

673, 682-83 (2000), which held that an insurer cannot defeat a section 155 claim by merely paying the insured and complying with policy procedures. But more recent cases, including *Moles v. Illinois Farmers Insurance Co.*, 2023 IL App (1st) 220853, and *Kroutil v. State Farm Mutual Automobile Insurance Co.*, 2021 IL App (4th) 210238, are more instructive.

¶ 33    In *Moles*, the plaintiff alleged breach of contract based on the insurer's failure to arbitrate her underlying claim. *Moles*, 2023 IL App (1st) 220853, ¶ 6. After the insurer established that arbitration remained ongoing, the trial court dismissed the contract claim, leaving only the section 155 claim. *Id.* ¶ 7. At the close of the plaintiff's case, the court directed a verdict for the insurer, finding that the plaintiff could not recover under section 155 absent a successful "action on the policy." *Id.* ¶ 12.

¶ 34    The appellate court affirmed, recognizing that the breach of contract claim qualified as an "action on the policy" because it alleged that the insurer refused to participate in arbitration as the policy required. *Id.* ¶ 20. But due to that claim having been dismissed and never reinstated, it could not support section 155 relief. *Id.* The court further explained that, although the plaintiff eventually settled her underinsured motorist claim, that claim was not an "action on the policy." *Id.* Rather, it reflected an out-of-court resolution of a dispute over damages. "Because plaintiff's section 155 claim was not connected to any extant action on the policy, she could not recover under section 155." *Id.*

¶ 35    In *Kroutil*, the plaintiff sued her insurer for breach of contract and violation of section 155 for refusing to pay damages for her underinsured motorist claim. *Kroutil*, 2021 IL App (4th) 210238, ¶ 5. The parties resolved the underinsured motorist claim through arbitration, resulting in a $150,000 award for plaintiff. *Id.* ¶ 6. The plaintiff then amended her complaint to seek relief solely under section 155. *Id.* ¶ 7. The trial court dismissed the amended complaint under

section 2-619.1 of the Code of Civil Procedure (735 ILCS 5/2-619.1 (West 2024)), finding dismissal proper under section 2-615 (*id.* § 2-615) because the complaint failed to state a viable section 155 claim and proper under section 2-619 (*id.* § 2-619) because *Cramer* rejected a standalone tort for bad faith. *Kroutil*, 2021 IL App (4th) 210238, ¶ 11.

¶ 36 The appellate court affirmed. The court noted that the plaintiff did not pursue her breach of contract claim in her second amended complaint, leaving her section 155 claim unconnected to an action on the policy. *Id.* ¶ 19. Although the plaintiff contended she prevailed on her breach of contract claim as the insurer paid her claim, the arbitration resolved only the amount owed under the policy. It did not adjudicate whether the insurer breached the contract. *Id.*

¶ 37 Becker-Othman pleaded both breach of contract and a section 155 claim. But her section 155 claim still depends on a successful "action on the policy." *Hoover*, 2012 IL App (1st) 110939, ¶ 40. Her breach of contract claim did not qualify because the policy imposed no duty on State Farm to adjust or pay the claim within a specified time frame. The trial court dismissed the claim for that reason, and Becker-Othman raised no developed argument to the contrary.

¶ 38 And as in *Moles* and *Kroutil*, payment of the underinsured motorist claim does not constitute success on an action on the policy. *Moles*, 2023 IL App (1st) 220853, ¶ 20; *Kroutil*, 2021 IL App (4th) 210238, ¶ 19. Before arbitration, State Farm agreed to pay the claim. Thus, Becker-Othman has not succeeded in an action on the policy and cannot pursue a stand-alone section 155 claim.

¶ 39       Dismissal of Claim under Administrative Code

¶ 40 Becker-Othman next contends the trial court erred in dismissing her claim alleging a private right of action under title 50, section 919.50(a)(1), of the Administrative Code (50 Ill. Adm. Code 919.50(a)(1) (2004)) and section 154.6 of the Insurance Code (215 ILCS 5/154.6

(West 2024)). The trial court having dismissed under section 2-615, our review is *de novo*. *Cochran v. Securitas Security Services USA, Inc.*, 2017 IL 121200, ¶ 11.

¶ 41     Section 919.50 requires an insurance company to affirm or deny liability on claims within a reasonable time and, once liability is affirmed and the claim amount determined, to offer payment within 30 days. It is well established that "a violation of the insurance rules contained in Title 50 of the Illinois Administrative Code does not give rise to a private cause of action." *Weis v. State Farm Mutual Automobile Insurance Co.*, 333 Ill. App. 3d 402, 406 (2002); see *Vine Street Clinic v. HealthLink, Inc.*, 222 Ill. 2d 276, 301-02 (2006); *Pryor v. United Equitable Insurance Co.*, 2011 IL App (1st) 110544, ¶ 8. "Under these regulations, the Illinois Department of Insurance has the sole authority to enforce the codes, and the proper remedy for a party who alleges a violation is to submit a complaint with the department." *Bernacchi v. First Chicago Insurance Co.*, 52 F.4th 324, 329-330 (7th Cir. 2022).

¶ 42     Section 154.6 of the Insurance Code likewise creates no private right of action. That provision identifies improper claims practices by insurers, while sections 154.7 and 154.8 authorize the Director of Insurance to enforce the Code and impose penalties. See 215 ILCS 5/154.5 to 154.8 (West 2024). Accordingly, section 154.6 "does not give rise to a private remedy or cause of action by a policyholder against an insurer but is instead regulatory in nature." *American Service Insurance Co. v. Passarelli*, 323 Ill. App. 3d 587, 590 (2001).

¶ 43     Becker-Othman also does not satisfy the requirements for an implied private right of action. "The standard that must be met for a court to imply a private right of action in a statute is quite high." *Channon v. Westward Management, Inc.*, 2022 IL 128040, ¶ 33. A private right of action is implied if (i) the plaintiff belongs to a class for whose benefit the statute was enacted, (ii) implying a private right of action is consistent with the statute's purpose, (iii) the plaintiff

suffered the type of injury the statute was designed to prevent, and (iv) implying a private right of action is necessary to provide an adequate remedy for violations of the statute. *Sawyer Realty Group, Inc. v. Jarvis Corp.*, 89 Ill. 2d 379, 391 (1982). "All four factors must be met before a private right of action will be implied." *Marque Medicos Fullerton, LLC v. Zurich American Insurance Co.*, 2017 IL App (1st) 160756, ¶ 57.

¶ 44　　　Whether a statute creates an implied private right of action presents a question of statutory interpretation, we review *de novo*. *Metzger v. DaRosa*, 209 Ill. 2d 30, 34 (2004).

¶ 45　　　On this record, Becker-Orthman has not made a sufficient showing on the fourth factor. As noted, the Insurance Code vests the Illinois Department of Insurance with the task of regulating the actions of insurance companies. See *Weis*, 333 Ill. App. 3d at 406; *Bernacchi*, 52 F.4th at 329-30. An aggrieved party can submit a complaint to the Department of Insurance (*Bernacchi*, 52 F.4th at 330) and the Department can "investigate violations of its rules and regulations, hold hearings, and impose penalties on those it finds in violation" (*Weis*, 333 Ill. App. 3d at 406 (citing 215 ILCS 5/401(b), (c), (d) (West 2000))). Nothing in the record before us indicates that the Department of Insurance has as a practice been unwilling or unable to pursue insureds' complaints. Accordingly, Becker-Othman claim necessarily fails. *Marque Medicos*, 2017 IL App (1st) 160756, ¶ 57.

¶ 46　　　　　　　　　　　　　　　　Additional Discovery

¶ 47　　　Becker-Othman maintains that the trial court should have allowed her additional discovery after State Farm moved for summary judgment. Specifically, she sought to depose several State Farm employees, obtain metadata related to her claim file and communications between State Farm and its outside counsel, and re-depose State Farm employees concerning those communications.

¶ 48    A party contending a need for discovery before responding to a motion for summary judgment must submit a Rule 191(b) affidavit stating (i) that material facts are unavailable due to hostility or otherwise, (ii) the names of the individuals the affiant seeks to depose, (iii) why affidavits could not be obtained from them; (iv) what they would testify to, (v) the basis for the affiant's belief that they would so testify, and (vi) that the affiant is a party to the action. *Koukoulomatis v. Disco Wheels, Inc.*, 127 Ill. App. 3d 95, 99 (1984). Becker-Othman concedes her affidavits do not satisfy the Rule 191(b) requirements but argues her noncompliance should be excused.

¶ 49    Generally, strict compliance with Rule 191(b) is required and the failure to file a compliant affidavit waives any claim that summary judgment should not have been granted before additional discovery. *Id.* An exception exists for a "*Celotex*-type" motion. See *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). When faced by a *Celotex*-type motion, a plaintiff need not always strictly comply with Rule 191(b) to obtain additional discovery. *Jiotis v. Burr Ridge Park District*, 2014 IL App (2d) 121293, ¶ 26. A *Celotex*-type motion arises when a defendant, who does not bear the burden of proof, seeks summary judgment by asserting that the plaintiff lacks evidence to establish a *prima facie* case on matters outside the plaintiff's knowledge or control. *Id.* ¶¶ 23, 25-28, 44-47; 4 Richard A. Michael, Illinois Practice, Civil Procedure Before Trial § 38.4 (2011) ("[w]here a motion for summary judgment is made by the party who does not have the burden of proof on an issue asserting that the nonmovant cannot prove a prima facie case, it is critical that the respondent be given a reasonable opportunity to conduct discovery before summary judgment").

¶ 50    State Farm's motion was not a *Celotex*-type motion. State Farm sought summary judgment on the grounds that Becker-Othman failed to state a claim for breach of the insurance contract

or engaged in bad faith. The insurance policy was not beyond Becker-Othman's control or knowledge. Moreover, she deposed Dr. Hutchinson regarding his medical opinion that her injury was unrelated to the accident, along with the State Farm's claims specialists who relied on his opinion. Thus, Becker-Othman's failure for to comply with the Rule 191(b) waives that issue.

¶ 51                     Payment of Dr. Hutchinson's Witness Fee

¶ 52        Becker-Othman seeks to reverse the order requiring her to pay Dr. Hutchinson's deposition fee. We review this issue for abuse of discretion and will not disturb the ruling absent a clear abuse. *Gleason v. Carter*, 212 Ill. App. 3d 206, 209 (1991).

¶ 53        Illinois Supreme Court Rule 208(e) (eff. Jan. 1, 2018) provides that "[e]ach party shall, unless manifest injustice would result, bear the expense of all fees charged by his or her Rule 213(f)(3) controlled expert witness or witnesses." Becker-Othman argues State Farm retained Hutchinson as a Rule 213(f) expert at trial. State Farm acknowledges it retained Hutchinson to opine whether Becker-Othman's injuries were accident-related and that he would have testified at the arbitration. But State Farm did not intend to call him as an expert regarding bad faith claims handling, and Hutchinson lacked expertise in insurance claims practices and procedures, the subject of that claim. Becker-Othman cites no authority to the contrary.

¶ 54        Illinois Supreme Court Rule 204 (eff. Mar. 17, 2023), governing depositions of nonparty physicians, provides that "[u]nless the physician was retained by a party for the purpose of rendering an opinion at trial, or unless otherwise ordered by the court, the fee shall be paid by the party at whose instance the deposition is taken." State Farm did not intend Hutchinson to offer opinions on the issues presented at trial, and Becker-Othman noticed the deposition. So the trial court acted within its discretion in requiring her to pay the fee.

1-25-0037

¶ 55        Affirmed.

***Becker-Othman v. State Farm Mutual Automobile Insurance*, 2026 IL App (1st) 250037**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 21-CH-4763; the Hon. Michael T. Mullen, Judge, presiding. |
| **Attorneys for Appellant:** | Kent D. Sinson and Daniel J. Lynch, of Sinson Law Group, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Michael Resis and Joseph P. Carlasare, of Amundsen Davis, LLC, of Chicago, for appellee. |